**UNITED STATES of America,**
**Plaintiff,**

v.

**W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.**

**No. CR 05–07–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

Nov. 23, 2005.

---

William B. Jacobson, Laurence A. Urgenson, Kirkland & Ellis LLP, Gary A. Winters, Mayer Brown Rowe Maw LLP, Washington, DC, Charles E. McNeil, Stephen R. Brown, Jr., Kathleen L. Desoto, Garlington, Lohn & Robinson PLLP, C.J. Johnson, Kalkstein Law Firm, Missoula, MT, David S. Krakoff, Ronald F. Waterman, Gough Shanahan Johnson Waterman, Palmer A. Hoovestal, Hoovestal Kakuk & Fanning, Helena, MT, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen A. Jonas, Wilmer Cutler Pickering Hale Dorr, Boston, MA, for Defendants.

William W. Mercer, Washington, DC, for Plaintiff.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction and Factual Background[1]

Defendants W.R. Grace and Co., a Connecticut corporation ("Grace"), and former Grace employees Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito and Robert C. Walsh, are charged by a ten-count Indictment with crimes arising from Grace's operation of a vermiculite mine near Libby, Montana (the "Libby Mine"). The defendants are charged with conspiracy to violate the Clean Air Act and to defraud the United States in violation of 18 U.S.C. § 371 (Count I); violation of the Clean Air Act, 42 U.S.C. § 7413(c)(5)(A) (Counts II, III and IV); wire fraud in violation of 18 U.S.C. §§ 1343, 2 (Counts V and VI); and Obstruction of Justice in violation of 18 U.S.C. §§ 1505, 2 (Counts VII, VIII, IX and X). The charges relate to the defendants' alleged role in the release and distribution throughout the Libby area of asbestos contaminated vermiculite.

This Order concerns two separate discovery motions filed by the Defendants. The first, filed by Defendant Grace on behalf of all Defendants, seeks an order compelling production of certain information as well as exculpatory information in the possession of government agencies. The second is a motion by the individual Defendants seeking an order compelling production of evidence favorable to the accused under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[2] Although Grace seeks some specific information, the essence of its motion is addressed to whether the government is obligated under the rules of discovery or *Brady* to produce files held by federal agencies[3] other than the prosecution. The individual Defendants' motion, on the other hand, seeks specific information or categories of information to which Defendants believe they are entitled but which they contend have not been produced. Both motions additionally object to the government's disclosure of its entire evidentiary database without differentiating evidence favorable to the accused. The United States opposes the motions. For the reasons set forth below, the motions are granted in part, and denied in part.

### II. Analysis

#### A. The Government's Discovery Obligations

■ In a criminal case, the United States' discovery obligation is rooted in two separate sources. The Federal Rules of Criminal Procedure, Rule 16(a)(1)(E), require the government to, upon the defendant's request, provide or allow the de-

---

1. The facts of this case are well known to the parties and will be discussed herein only to the extent necessary to address the issues raised by the present motions.

2. The individual Defendants' opening brief in support of their motion fails to comply with Local Rule 10.1(b) in that it is not in true double-spacing. *Cf.* Defendants' reply brief, is double-spaced in accordance with L.R. 10.1(b). The parties are reminded to adhere to the Local Rules lest they be subject to sanctions.

3. Grace claims that along with its motion to compel it filed a "memorandum that provides the Court with a list of specific documents and types of documents that the Defendants have reason to believe exist in agency files." No such memorandum appears on the docket for this case. Grace's motion is twenty pages in length, thereby exhausting the maximum number of pages allowed for an opening brief. Any effort to incorporate other documents into the motion is an effort to exceed the page limit and will be rejected by the Court. *See* Local Rule CR 12.1(b); Order denying Defendants' motion for suspension of L.R. 12.1(b), dated July 29, 2005.

fendant access to documents and objects in the government's possession. The due process clauses of the Fifth and Fourteenth Amendments to the Constitution, as interpreted by the United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny require the prosecution to learn of and disclose to the defense any exculpatory or impeachment evidence favorable to the accused that is in the prosecution's possession. The government's discovery obligations under Rule 16 and its constitutional obligations under *Brady* are separate and distinct, although they appear to be conflated in the parties' briefs. Before resolving the pending motions, it is first necessary to clarify as to each both the scope of the obligation and the proper enforcement mechanism.

### 1. Rule 16(a)(1)(E), Fed.R.Crim.P.[4]

Rule 16(a)(1)(E) provides:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

When a defendant seeks discovery under Rule 16(a)(1)(E)(i) on the ground that the information sought is material to the preparing the defense, the defendant must make a threshold showing of materiality. *United States v. Santiago,* 46 F.3d 885, 894 (9th Cir.1995). That "requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'" *Id.* (quoting *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir. 1990)). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *Id.* "Requests under Rule 16 must be sufficiently clear to inform the prosecution about what is sought." *United States v. McVeigh,* 954 F.Supp. 1441, 1450 (D.Colo.1997).

While the text of Rule 16(a)(1)(E) makes the government disclose all items in its "possession, custody, or control," the Ninth Circuit has held that the scope of Rule 16 extends beyond that which is in the physical possession of the prosecutor. Information in the hands of other federal agencies must also be turned over if the prosecutor has knowledge of and access to the documents sought. *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir.1989). "[A] prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations under [Rule 16(a)(1)(E)]." *Id. See, also, United States v. Liquid Sugars, Inc.,* 158 F.R.D. 466, 474 (E.D.Cal.1994) ("for obvious practical reasons, not every governmental agency can be considered as part of the 'government' for discovery purposes"). At the same time, however, a prosecutor may not employ "a mechanical definition of 'government' that would deny to the defendant documents accessible to the prosecution." *Bryan,* 868 F.2d at 1036.

The knowledge and access test is met when there exists any information in the possession, custody or control of a

---

**4.** Prior to the stylistic changes contained in the 2002 Amendments to the Federal Rules of Criminal Procedure, the substantive provisions set forth in current Rule 16(a)(1)(E) were located in Rule 16(a)(1)(C). *See* Advisory Committee's Note to 2002 Amendments, Rule 16, Fed.R.Crim.P.

federal agency participating in the same investigation of the defendant. *Id.* Agency involvement in the investigation is a "sufficient, but not necessary factor to show that the prosecution was in 'possession' of the agency's information." *Santiago,* 46 F.3d at 893–94. Information held by federal agencies not directly involved with the investigation is nonetheless discoverable under Rule 16(a)(1)(E) if the prosecutor has knowledge of and access to the information and the requirements of the rule are otherwise met. *Id.*

Rule 16 sets a framework for a court to regulate discovery before trial. Rule 16(d) authorizes the court to issue a protective or modifying order or to compel disclosure in accordance with the discovery rules. Rule 12(b)(3)(E), Fed.R.Crim.P., means that motions pursuant to Rule 16(d) to enforce the discovery rules must be made before trial.

### 2. The Constitutional Mandate of *Brady*

The due process clauses of the Fifth and Fourteenth Amendments require that the prosecution in a criminal case disclose to the defense any evidence in the government's possession that is favorable to the accused and that is material to either guilt or punishment. *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. Suppression of such evidence by the government works a constitutional violation, regardless of the good faith or bad faith or the prosecutor. *Id.* "[A]n inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment." *Strickler v. Greene,* 527 U.S. 263, 288, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). The constitutional obligations under *Brady* are self-executing, and they do not require a motion by the defense or an order of the court to take effect. *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (citing *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d

342 (1976)). *Brady* material must be disclosed sufficiently in advance of trial as to be of value to the accused. *United States v. Aichele,* 941 F.2d 761, 764 (9th Cir.1991).

Before there is a constitutional violation under *Brady,* the following three elements must be satisfied:

(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;

(2) that evidence must have been suppressed by the prosecution, either willingly or inadvertently; and

(3) prejudice must have ensued.

*Strickler,* 527 U.S. at 281–82, 119 S.Ct. 1936. The Supreme Court has cast the prejudice prong as requiring that the evidence suppressed be material. *See, e.g., Kyles,* 514 U.S. 419, 115 S.Ct. 1555; *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375. Despite the use of the term "reasonable probability," the Supreme Court has emphasized that materiality does not require a demonstration by a preponderance. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles,* 514 U.S. at 434, 115 S.Ct. 1555. In deciding whether this reasonable probability exists, courts should consider the suppressed evidence collectively, rather than on an item-by-item basis. *Id.* at 436, 115 S.Ct. 1555.

*Brady* places an affirmative duty on the prosecutor to seek out information in the government's possession that is favorable to the defendant. "[T]he indi-

vidual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case." *Kyles,* 514 U.S. at 437, 115 S.Ct. 1555. The prosecutor's obligation to seek out exculpatory evidence in the government's possession is not tempered by considerations of reasonableness or undue burden. "The failure to comply with a constitutional command to present evidence fairly at trial is not excused by any inconvenience, expense, annoyance or delay." *McVeigh,* 954 F.Supp. at 1450. The prosecution must inform itself as to all information in the government's possession, and disclose that which is favorable to the accused.

Whether exculpatory information is in the government's possession for *Brady* purposes is measured by the same "knowledge and access" test used under Rule 16(a)(1)(E) for discovery.

As with [Rule 16(a)(1)(E)]'s definition of government, we see no reason why the prosecutor's obligation under *Brady* should stop at the border of the district. If a federal prosecutor has knowledge of and access to the exculpatory information as defined in *Brady* and its progeny that is outside the district, then the prosecutor must disclose it to the defense.

*Bryan,* 868 F.2d at 1037 (rejecting government's argument that Rule 16 and *Brady* material need not be disclosed if located outside of the district in which the prosecution was pending). As in the formal discovery context, a prosecutor is deemed to have knowledge of and access to *Brady* material if the information is in the custody or control of any federal agency participating in the same investigation of the defendant. *United States v. Zuno–Arce,*

44 F.3d 1420, 1427 (9th Cir.1995) (prosecution deemed in possession of FBI files where FBI investigated the case); *United States v. Blanco,* 392 F.3d 382, 393–94 (9th Cir.2004) (prosecution in drug case deemed in possession of DEA files). Moreover, in the Ninth Circuit, the prosecution is deemed to be in possession of agency files where the agency involved is charged with administration of the statute allegedly violated and the agency consulted with the prosecutor in the steps leading to prosecution. *United States v. Wood,* 57 F.3d 733, 737 (9th Cir.1995) (Food and Drug Administration files found to be in government's possession for purposes of prosecution under the Federal Food, Drug and Cosmetic Act). As is the case with Rule 16 discovery, the touchstone remains whether the prosecution has knowledge of and access to the information. *Bryan,* 868 F.2d at 1037. The conditions described are sufficient but not necessary conditions to finding possession within the rule.

### 3. Distinction Between Rule 16 and *Brady*

There is an important distinction between the government's discovery obligations under Rule 16 and its constitutional obligations under *Brady.* Rule 16(a)(1)(E) requires disclosure upon request of all material information in the government's possession, and provides a mechanism by which a defendant may seek enforcement of the rule before trial. *Brady* imposes a self-executing constitutional obligation, and generally is not the proper subject of court rulings prior to trial. This is because any information requested by a defendant that is "favorable to the accused" under *Brady* is also material under Rule 16(a)(1)(E)(I) and therefore must be disclosed under that rule.[5] Thus, if the

---

**5.** The Advisory Committee Notes to the 1974 Amendments to Rule 16 demonstrate that evidence that is favorable to the accused under

*Brady* is subsumed within Rule 16's definition of materiality. "Although the Advisory Committee decided not to codify the Brady Rule,

defense knows of the existence of information favorable to the accused, it should request that information by invoking Rule 16(a)(1)(E). For the prosecution the constitutional command of *Brady* goes beyond Rule 16 to require the disclosure of information of which the defense *is not* aware. In such cases, the government's nondisclosure could not be the subject of a pre-trial motion because the defense is not aware the undisclosed information exists. Rather, *Brady* violations are generally raised and adjudicated post-trial, upon the revelation by the government or discovery by the defense of information favorable to the accused that should have been disclosed before trial. Only after trial has concluded and a complete trial record exists may a court analyze whether information the government has not produced constitutes a *Brady* violation. "Indeed, it is not possible to apply the materiality standard in *Kyles* before the outcome of the trial is known." *McVeigh,* 954 F.Supp. at 1450.

For purposes of the pending motions, then, the Defendants' requests for specific information are properly characterized as motions to compel under Rule 16(d)(2), and they will be analyzed in accordance with the disclosure requirements of Rule 16(a)(1)(E). The requirements of *Brady* play no role in deciding whether information identified and requested by Defendants must be produced. Those disputes are properly decided under Rule 16(a)(1)(E). At this stage of the proceedings, the Court will only weigh in on *Brady* for purposes of correcting any misconception about the proper scope of the government's *Brady* obligations. The discussion of *Brady* below is limited to whether a given federal agency's files are "in the government's possession" for *Brady* purposes and therefore must be reviewed by the prosecution for evidence favorable to the accused.

**B. The Scope of the Government's Obligation Under *Brady*: Information in the Possession of Federal Agencies**

The briefs reveal a substantial disagreement between the parties as to what constitutes information "in the government's possession" for purposes of *Brady*. Because the United States has evinced an understanding of the scope of its *Brady* obligations that is not in keeping with the law of this circuit, it is necessary to clarify the government's obligations.

The investigation leading to the Indictment in this case is a joint undertaking of the Department of Justice ("DOJ") and the Environmental Protection Agency's Criminal Investigation Division ("EPA–CID"). The investigation revealed several state and federal agencies that had dealt with Defendant Grace and the Libby Mine in the course of routine administrative duties during the period charged in the Indictment. For example, the Mine Safety Health Administration ("MSHA") and the Occupational Safety and Health Administration ("OSHA") periodically inspected Grace's Libby facilities for compliance with safety regulations. The National Institute for Occupational Safety and Health ("NIOSH") and the Consumer Product Safety Commission ("CPSC") asked for information from Grace about the nature and level of asbestos fiber releases from Libby vermiculite and vermiculite products. During the course of the investigation, DOJ and EPA–CID interviewed employees and obtained files from MSHA,

the requirement that the government disclose documents and tangible objects 'material to the preparation of his defense' underscores the importance of disclosure of evidence favorable to the defendant." Advisory Committee's Note to 1974 Amendments, Rule 16, Fed.R.Crim.P.

OSHA, NIOSH and CPSC. The prosecution also obtained files from the Bureau of Land Management ("BLM"), the United States Geological Survey ("USGS"), the Montana Department of Environmental Quality ("MDEQ"), and the Agency for Toxic Substances Disease Registry ("ATSDR").

█ The government takes the position that it has provided the defense with all documents it has obtained from the agencies listed above pursuant to Rule 16 and argues that it has no further obligations under Rule 16 or *Brady*. According to the prosecution, "[n]either Rule 16 nor *Brady* require the government to retrieve and produce documents from governmental agencies not participating in the investigation and prosecution of the defendants." The government maintains that it is only required to conduct a *Brady* search of materials in the possession of the "prosecution team," which is characterized by the government as consisting of investigative and prosecutorial personnel. The "prosecution team" concept upon which the government relies is a product of case law from other circuits;[6] it has not been embraced by the Ninth Circuit. In my view, the law of the Ninth Circuit prohibits adoption of the flawed "prosecution team" idea. The prosecution is in possession of information held by any government agency provided the prosecution has knowledge of and access to the information. This is so regardless of whether the agency holding the information participated in the investigation. *Santiago*, 46 F.3d at 894 ("We therefore reject the district court's finding that the government has 'possession and control' over the files of only those agencies that participated in the investigation").[7]

The Ninth Circuit provides some guidance as to the application of the "knowledge and access" test for purposes of *Brady* and Rule 16.[8] Although knowledge and access are factual determinations that must necessarily be made on a case-by-case and agency-by-agency basis, the *Santiago* opinion provides insight about the rule. In that case, a federal prisoner convicted of murdering a fellow inmate appealed the district court's denial of his motion to compel production of Bureau of Prisons ("BOP") files on the government's inmate witnesses. The prosecution took the position that the files were not in its possession, custody or control because BOP was "a separate governmental division with no responsibility for the investigation or prosecution of the crime." 46 F.3d at 893. Applying the "knowledge and access" test, the Circuit rejected the district court's finding and concluded that the prosecution was in "possession and control" of BOP files. *Id.* at 894. With regard to knowledge, the court found that

6. *See, e.g., United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir.1989) (quoting *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979); *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir.1996); and *United States v. Pelullo*, 399 F.3d 197, 217–18 (3rd Cir.2005)).

7. Although the court in *Santiago* was addressing "possession and control" in the Rule 16 context, *Bryan* makes clear that the "possession and control" elements of Rule 16 and *Brady* are interchangeable. *Bryan,* 868 F.2d at 1037.

8. Most Ninth Circuit cases dealing with the question of "possession and control" present

factual scenarios in which the prosecution is deemed to have knowledge and access because the agency in question is investigating the crime, *see, e.g., Blanco*, 392 F.3d at 393–94, or is responsible for administering the statute allegedly violated and has consulted with the prosecution in the steps leading up to indictment. *See, e.g., Wood*, 57 F.3d at 737. In such cases, a factual determination as to knowledge and access is unnecessary because the prosecution is deemed to have possession and control regardless of actual knowledge and access.

the prosecution "certainly knew" that its inmate witnesses would have BOP files. *Id.* As for access, the court noted that the government was able to obtain the defendant's prison file from BOP and concluded on that basis that other BOP files were accessible to the prosecution as well. *Id.*[9]

■ Appreciation of the knowledge and access test in this case shows that the United States takes an impermissibly narrow view of its obligations under *Brady.* It is insufficient for *Brady* purposes for the prosecution to produce only that information from other agencies that has found its way into the physical possession of the prosecutor. The prosecution may not simply ask for information it wants while leaving behind other, potentially exculpatory information within agency files. "The government in the form of the prosecutor cannot tell the court there is nothing more to disclose while the agency interested in the prosecution holds in its files information favorable to the defendant." *Wood,* 57 F.3d at 737. "Rather, the prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf." *Carriger v. Stewart,* 132 F.3d 463, 479–80 (9th Cir.1997)

(citing *Kyles,* 514 U.S. at 437, 115 S.Ct. 1555). "Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned." *Stewart,* 132 F.3d at 480 (citing *Kyles,* 514 U.S. at 438–40, 115 S.Ct. 1555).

■ The prosecution in this case has asked for and received documents and information from a number of federal agencies, including EPA, NIOSH, MSHA, CPSC, BLM, USGS, and ATSDR.[10] The prosecution sought information from these agencies which shows knowledge on the part of the government that the agencies hold information relevant to this case. The agencies supplied the requested information to the prosecution and that shows that the prosecution has access to the agencies' files. Accordingly, exculpatory information in the files of the agencies listed above is within the prosecution's "possession and control" for *Brady* purposes and must be reviewed for evidence favorable to the Defendants.[11]

This analysis clarifies the government's obligations under *Brady.* It should not be

---

9. The *Santiago* court additionally noted that BOP and the United States Attorney's Office are both branches of the DOJ, which would facilitate access, and that case law has established that BOP files are within the possession and control of the United States Attorney. 46 F.3d at 894.

10. Although the prosecution consulted with and received files from at least one agency of the State of Montana, federal prosecutors are generally not deemed to have access to material held by state agencies. *See Santiago,* 46 F.3d at 894 (citing *United States v. Aichele,* 941 F.2d 761, 764 (9th Cir.1991)). Contrary to Grace's contention that this Court's March 12, 2005 Scheduling Order has "all but mooted" the distinction between the United States and the State of Montana, nothing in that Order (which required production of MDEQ documents "obtained by" the prosecution) di-

minishes the force of this longstanding Ninth Circuit precedent.

11. Moreover, as it relates to the EPA, that agency's files are deemed to be within in the possession and control of the prosecution both because EPA is an investigating agency, *see, e.g., Blanco,* 392 F.3d at 393–94, and it is responsible for administering several of the statutes allegedly violated (*e.g.,* Clean Air Act, CERCLA) and has consulted with the prosecution in the steps leading up to indictment. *See, e.g., Wood,* 57 F.3d at 737. The Defendants have maintained a right to discovery of EPA files since the outset of this case. *See, e.g.,* Mr. Frongillo's comments at the March 9, 2005 Scheduling Conference regarding the EPA's position on asbestos danger in the wake of the World Trade Center catastrophe, discussed at pp. 1086–87, *infra.*

construed to limit those obligations to a review of the files of the agencies discussed above. The prosecution's constitutional duty under *Brady* is self-executing, and cannot be enlarged or curtailed by court order. In that regard, it remains the case that "a federal prosecutor need not comb the files of every federal agency which might have documents" regarding the defendant. *Zuno–Arce*, 44 F.3d at 1427. The government's obligations under *Brady* cover a broad range of federal agencies and fulfilling its constitutional obligations may prove burdensome to the prosecution. But this is a case in which the government has levied a broad and complex Indictment, and has consulted with a number of federal agencies in gathering evidence against the accused. The Constitution does not go too far in defense of due process when it requires that the prosecution's search for evidence favorable to the accused be as far-reaching as the search for evidence against him.[12]

### C. The Manner of the Government's Disclosure of *Brady* Material

The government has provided the defendants with its entire evidentiary database consisting of 3,389,109 pages of discovery. The documents are in a searchable format and the Defendants report that they have conducted exhaustive searches of the database. Nonetheless, the Defendants argue that *Brady* requires the prosecution to search for and identify for the defense each document in the database that is favorable to the defense. The Defendants cite cases from other circuits in which courts have held that *Brady* obligations

are not fulfilled when the prosecution discloses an undifferentiated mass of documents. *See, e.g., United States v. Hsia*, 24 F.Supp.2d 14, 29–30 (D.D.C.1998) ("the government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack").

The prosecution relies on contrary case law in support of its position, also from other circuits. *See, e.g., United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir.1997) (overruled on other grounds by *United States v. Estate of Parsons*, 367 F.3d 409 (5th Cir.2004)) ("there is no authority for the proposition that the government's *Brady* obligations require it to point the defense to specific documents within a larger mass of material that it has already turned over").

■■■■ As it relates to the manner of production, *Brady* simply requires that information be produced in such a way that it will be of value to the accused. The government's production in this case complies with that requirement for at least two reasons. First, the documents have been presented in a searchable format. More importantly, over half of the documents presented—2,613,658 pages—are actually Grace documents provided to the government during the Libby Superfund Cleanup litigation. There is no reason to assume that the government is better equipped through resources or knowledge to locate exculpatory documents than are the Defendants.[13]

---

**12.** In order to ensure that the prosecution will discharge its obligations under *Brady* in a timely manner given the complexity of this case, the Court shall require disclosure of all *Brady* material no later than January 13, 2006 (subject, of course, to the ongoing duty to disclose newly discovered *Brady* material).

**13.** The Court notes that the events surrounding the Libby Mine have spawned a great deal of civil litigation in which Defendant Grace was a party. It is assumed that this participation has led to a heightened familiarity on Grace's part with the documents at issue generally and specifically with the location and nature of exculpatory documents.

The individual Defendants contend that while Grace may be imputed knowledge of its own documents, it is unreasonable to expect the individual Defendants to have a working knowledge of so many pages of material. However, as a practical matter there is every reason to expect that the individual Defendants will have access to and benefit from Grace's institutional understanding of its own documents. Counsel for the Defendants expressed an intention to work together in preparing the defense during the March 9, 2005 scheduling conference. Grace has filed several motions on behalf of all Defendants, including the instant motion to compel. Moreover, the parties expressed a willingness to file joint briefs in Grace's Motion For Leave of Court to File Joint Briefs in Excess of 20 Pages, filed July 22, 2005 and joined by Defendants Favorito, Bettacchi and Wolter.

There is no reason to believe that the Defendants are less able to locate exculpatory materials within the evidentiary database than is the government. For the reasons stated, the Defendants' request for an order requiring the prosecution to identify Brady materials within the discovery already produced is denied.

## D. Requests for Specific Information Under Rule 16(a)(1)(E)(I)

The Defendants' requests for specific information are properly cast not as motions for *Brady* material but instead as motions to compel discovery in accordance with Rule 16(a)(1)(E) and Rule 16(d)(2). As is discussed in greater detail above, documents and objects are discoverable under Rule 16(a)(1)(E)(I) if they are:

(1) requested by the defendant in a manner sufficiently clear to inform the prosecution about what is sought;

(2) material to preparing the defense in that they are helpful to the defense; and

(3) in the possession, custody, and control of the government as determined by the "knowledge and access" test.

The Defendants make several requests for certain documents and categories of documents. For purposes of this analysis, overlapping requests by Grace and the individual Defendants will be considered together.[14]

### 1. Evidence that the Federal Government was Aware of Asbestos Dangers

The Defendants ask that the government be made to produce evidence Defendants believe exists showing that the gov-

---

**14.** The individual Defendants attempt to incorporate into their motion to compel 51 pages of discovery requests set forth in a dozen letters sent to the government over the course of this case. This constitutes an improper effort to exceed the page limitations of Local Rule CR12.1(b). Consequently, this Order addresses only those categories of information specifically identified in the briefs.

The parties are reminded that the Court has neither the resources nor the inclination to referee every dispute over every document during the discovery phase of this case. The Court's role is to clarify each side's obligations where necessary, and to settle disputes over specific items when the parties have been unable, *after a undertaking a good*

*faith effort*, to resolve the dispute independently. The requirement that the parties attempt in good faith to resolve disputes bears emphasis as it relates to the prosecution, which responded to four months of written discovery requests with a one-paragraph letter, concluding as follows:

> In essence, the prosecution team has disclosed all materials presently in its possession and has committed to providing additional materials as they are discoverable by the prosecution team. If you do not view these disclosures as sufficient, you should file a motion for discovery with the district court by the August 1, 2005 deadline.

Letter from Kris McLean to defense counsel, dated July 12, 2005.

ernment was aware that exposure to Libby vermiculite posed health risks during the time period in which the Defendants were allegedly concealing information about the health risks. In support of their contention that such evidence exists, the Defendants rely entirely on media accounts about how the facts giving rise to the indictment played out. For example, in their book *An Air That Kills*, authors Andrew Schneider and David McCumber write of "boxes of documents" and "reams of paper" gathered by EPA officials from other federal agencies during the Superfund cleanup process in Libby. *Id.* at 188 (G.P. Putnam's Sons 2004). The book quotes an EPA employee as stating that the documents retrieved from other agencies reveal that the agencies were aware of the dangers of asbestos and "not a damn thing was done about it." *Id.* at 190. The Defendants claim that they have not received "boxes of documents" regarding federal agencies' knowledge of the dangers of Libby vermiculite and demand that the information be produced. The government represents that it has produced the materials requested by the Defendants "[t]o the extent such information is in possession of the prosecution team." The government is not bound by journalistic descriptions or quantification of "evidence."

 On the other hand, the prosecution may not rely on the "prosecution team" construct to limit its discovery obligations. The prosecution is required under Rule 16 to produce requested information that is within its possession or control under the "knowledge and access" standard. *See Bryan*, 868 F.2d at 1036. Information held by the EPA is deemed to be within the prosecution's possession and control because EPA participated in the investigation of this case. *Id.* The Defendants have made a focused request for documents they believe to be in EPA's possession and have sufficiently alleged the materiality of those documents. If it has not already done so, the prosecution must, in accordance with Rule 16(a)(1)(E)(i), produce all documents retrieved from other agencies and reviewed by EPA employees which tend to show that other agencies were aware of the dangers of Libby vermiculite. If the prosecution has already disclosed all documents responsive to the specific requests, it should say so.[15], [16]

## 2. Evidence That Government Entities Told the Defendants the Mine Site Was Safe

The Defendants want evidence that governmental entities told them that the Libby Mine was safe. What they seek are documents in the possession of Montana state agencies. The government says that it has produced documents responsive to the Defendants' request to the extent they are in the prosecution's possession. The

---

15. This should not be construed as holding that the prosecution's obligation under Rule 16 is not fully discharged until it has produced "reams of paper" or "boxes of documents" responsive to the request. The prosecution's duty is to produce all documents responsive to the request, and the completeness of that response will not be judged against subjective media accounts.

16. Grace additionally requests documents relating to two tests conducted by EPA employees in 1980 and 1982, respectively. Grace maintains that the existence of the materials sought is established by two newspaper articles attached to its opening brief (dkt # 177) as Exhibits J and K. Neither the materials delivered to chambers nor the hard copies on file in the clerk's office contain Exhibits J and K to Grace's opening brief. In both cases, the exhibits stop at the letter E. In the absence of any proof that the documents sought in fact exist, the Court cannot make a determination as to materiality and will not order the prosecution to produce the documents.

government's production is sufficient under Rule 16(a)(1)(E) because information in the files of state agencies is not within the possession and control of federal prosecutors. *See Aichele,* 941 F.2d at 764. The prosecution is not required to disclose materials that are exclusively within the possession of state agencies, although it is required, in accordance with Rule 16 and the Scheduling Order, to produce relevant documents obtained from state agencies and now in the possession of the prosecution.

### 3. Evidence Showing Community Knowledge of the Presence of Tremolite and Its Potential Dangers

The Defendants seek documents showing that W.R. Grace communicated potential dangers of Libby vermiculite or the presence of tremolite to prospective buyers, lessees, or users of Grace's Libby properties, or that the Libby community knew of those dangers. The discovery provided to date contains a letter from Grace to prospective buyer 3M in which Grace refers 3M to asbestos exposure studies provided to 3M by Grace. Defendants argue that the government must produce more evidence of Grace's notice to potential buyers of asbestos risks because "[a]lthough the 1991 letter to 3M was included in the government's production, other examples that one would expect to find were not." (Def.'s Op. Br. at 9.)

The Defendants' speculation as to the existence of other documents showing notice to prospective buyers is insufficient to warrant an order directing the prosecution to hunt for other examples "one would expect to find." To merit discovery under Rule 16, the defense must present "facts which would tend to show that the Government is in possession of information helpful to the defense." *Santiago,* 46 F.3d at 894 (quoting *Mandel,* 914 F.2d at 1219). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *Id.* The government is subject to self-executing obligations under *Brady* and discovery obligations triggered by valid requests under Rule 16. The Court will not impose an additional burden by compelling production of documents that may or may not exist based on the speculative inferences of the defense.

Defendants also seek information relating to Grace's communications to school officials and community members regarding vermiculite running tracks in Libby. In support of their contention that such information exists, the Defendants cite the following passage from January 31, 2001 letter from K.W. Maki, Superintendent of the Libby Public Schools, to the EPA:

> In 1982, the Superintendent of Schools received a call from the W.R. Grace Business Manager informing him that the vermiculite on the tracks posed potential problems as it had tremolite asbestos fibers in it, which could be medically harmful (see attached letters). He made it clear that we couldn't keep the vermiculite track in its present state. He gave two options. Number One, W.R. Grace would come and remove the vermiculite fill or Number Two they would pay to have the vermiculite encapsulated. After consulting with the school officials and coaches the second option, encapsulating the vermiculite, was recommended.

Grace contends that government has failed to produce the "attached letters" referred to in the Maki letter, and that those letters would "conclusively prove that Grace disclosed exactly what the indictment alleges it concealed." (Def's Op. Br. at 9.)

The government responds by referring the Defendants to the Report of Interview of K.W. Maki already provided in discovery. According to the government, Maki

explained in that interview that the "attached letters" were memos he had received from Libby resident Gayla Benefield. The government states that it has already disclosed the those memos. In light of that statement, an order compelling production of the requested materials is not warranted.

The Defendants also want the government to produce statements and Reports of Interview for witnesses concerning the school running tracks, including Bill Cooper, Bill Anderson, Stan Evans and Dick Baeth. The government responds that it is in the process of preparing Reports of Interview for Stan Evans and Dick Baeth, and that it has not interviewed Bill Cooper or Bill Anderson. In light of that statement, an order compelling production of the requested materials is not warranted.

### 4. Evidence of Government Approval of the Kootenai Development Corporation Transaction

The Defendants seek any documents tending to show that the EPA approved the allegedly fraudulent Kootenai Development Corporation ("KDC") transaction referred to in Counts I and VI of the Indictment. Defendants contend that such documents are material because they tend to show that Grace's sale of Libby properties to KDC and subsequent purchase of those properties received EPA approval, which would undermine the government's allegation that the transactions were fraudulent. The Defendants' belief that such documents exist is based entirely on passages from *An Air That Kills. See* Schneider and McCumber at 177. The book depicts meetings in 1999 and 2000 between EPA employees and KDC majority shareholder Lum Owens in which Owens was urged to sell the KDC properties back to Grace, which Owens did on July 14, 2000. Defendants want any evidence that KDC cooperated with EPA efforts in 1999–2000, or that the EPA was involved

in or approved of the transaction in any way.

The government states that it has provided materials responsive to this request "to the extent such materials are in possession of the prosecution team." Again, reliance on the prosecution team concept results in an improperly narrow view of the government's obligations under Rule 16. The government must provide all responsive documents within its possession and control, meaning all documents of which it has knowledge and to which it has access, and it must provide those materials immediately. If the government has already provided all responsive materials, it should say so.

### 5. Evidence of Grace's Cooperation With NIOSH

The Defendants note that a series of meetings occurred between Grace employees and NIOSH officials in 1980–81. Defendants contend that those meetings included Grace's cooperation with a NIOSH survey of Grace employees. Any evidence of that cooperation is material, Defendants argue, because NIOSH is one of the agencies allegedly frustrated by the conspiracy charged in Count I. Defendants complain that among the documents produced by the government, "there is scant, if any, record by that agency of what transpired at its meetings with Grace in 1980 and 1981." The government maintains that it has provided all responsive documents held by the "prosecution team."

Both the Defendants' request and the government's response are lacking when measured by the standards of Rule 16. Defendants admit that responsive documents have been produced, but argue that because there are so few, there must be more. That sort of speculation is normally insufficient to meet the materiality standard of Rule 16. *See Santiago,* 46 F.3d at

894 (quoting *Mandel,* 914 F.2d at 1219). However, in this case, the government's response lends some credence to the Defendants' suspicion that more responsive documents exist because the government makes clear that it has provided only those responsive documents held by the "prosecution team." Under *Bryan's* knowledge and access standard, the prosecution must produce all responsive documents—whether they be held by the prosecution or by NIOSH—and to do so immediately. If it has already produced all responsive documents, it should say so.[17]

### 6. Evidence of Individual Defendants' Limited Involvement in Company Decisions About Vermiculite

The Defendants make a general request for any witness statements not yet produced that tend to show that they had limited involvement in Grace's decision making process regarding tremolite. While acknowledging that some such statements have already been provided, Defendants seek any others that may not yet have been produced. This speculation falls short of showing "facts which would tend to show that the Government is in possession of information helpful to the defense," as is required by Rule 16. *See Santiago,* 46 F.3d at 894 (quoting *Mandel,* 914 F.2d at 1219). Similarly, the Defendants' conclusory assertion that "at least one government witness" stated that Defendant Wolter was excluded from certain meetings is insufficient to establish materiality. The Defendants' request in this regard is overbroad and speculative and will be denied.[18]

### 7. Evidence That Grace's Filings Complied With the Toxic Substances Control Act

Five of the overt acts alleged in Count I of the Indictment pertain to Grace's alleged failure to disclose studies as required under the Toxic Substances Control Act ("TSCA"). The Defendants seek an order compelling production of any EPA documents generated in response to Grace's disclosure of studies in 1986 (the McDonald and NIOSH studies) and 1992 (the Hamster Study). The Defendants argue that there is reason to assume any such documents are favorable to the defense because the allegedly untimely submissions did not lead to any prior regulatory or legal proceedings. The government claims to have produced all responsive documents held by the prosecution team.

This is another instance in which the government's reliance on the "prosecution team" concept is improper. The Defendants have made a specific request for internal EPA documents generated in response to Grace's submission of three studies. Given the span of time between the allegedly untimely submissions and the Indictment in this case, it is reasonable to infer that any such documents are material to preparing the defense as they may show that the EPA did not regard the alleged lapses as warranting criminal prosecution at the time. Rule 16 requires that the prosecution disclose all responsive documents, including those held solely by the EPA, and that it do so immediately. If it has already produced all responsive documents, it should say so.

---

**17.** The Defendants also request a Report of Interview for NIOSH employee Dr. Harlan Amandus. The prosecution states that it is in the process of interviewing Dr. Amandus and will provide a report of interview as soon as possible.

**18.** In conjunction with this request, the Defendants have asked for a Report of Interview for witness Jim Regh. The government states that it has disclosed that report.

8. **Materials Showing Scientific Disagreement About the Dangers of Tremolite and the Libby Operations**

The Defendants make several requests for information which they argue tends to show disagreements within EPA as to the dangers of tremolite asbestos. In particular, the Defendants seek any information that could undermine the Indictment's declaration at Paragraph 47 that "[m]odern science has not established a safe level for asbestos exposure for which there is no increased risk of disease." Of particular interest to Defendants are documents relating to the EPA's investigation of airborne asbestos dangers in New York City immediately following the World Trade Center attacks in September 2001. They seek all files pertaining to the EPA's response to the collapse of the towers, including "documents reflecting EPA's characterization of particulates from the destruction of the World Trade Center, the toxicological effect of the particulates, the potential exposures to airborne and settled particulates, statements about air quality, air monitoring results and medical monitoring results."

The government has refused to produce any responsive documents, arguing that the prosecution team is not in possession of any such documents and that they are irrelevant to the allegations of the Indictment. Both arguments fail. The EPA's Criminal Investigation Division has been involved with the investigation of this case from the beginning. Undoubtedly, EPA–CID has access to documents held by the civil regulatory divisions of the EPA. The prosecution has hinted at a distinction between EPA–CID and the agency's civil side, but there is no support in the rules of discovery or the relevant case law for such a distinction. Moreover, the EPA is the agency charged with administering the statutes allegedly violated and consulted with the prosecution in the steps leading up to Indictment, which means the prosecution is deemed to have knowledge of and access to all EPA files, not just those held by EPA–CID. *See Wood,* 57 F.3d at 737. There is some suggestion that EPA officials working in Libby may have been involved in assessing asbestos and clean-up risks in New York City after September 11, 2001. Accordingly, the requested documents are within the prosecution's possession, custody and control for purposes of Rule 16.

The government cannot justify non-disclosure by arguing that such documents are irrelevant. Materiality requires that the Defendants show that the information sought would be helpful to the defense. While the government professes to see no connection, the defense may be aided by documents tending to show that the agency, or witnesses, actively involved in this prosecution made determinations elsewhere that conflict with critical allegations here. This case relies on allegations about the danger of airborne asbestos. Defendants are entitled to know if elsewhere it was determined that similar airborne asbestos levels were not harmful. The government appears to take the position that information is only material if it directly references W.R. Grace or Libby. That position is too narrow. The Defendants are entitled to defend against all of the government's allegations, including those dealing with the dangers of asbestos generally. To that end, the Defendants have advanced a legitimate request for information discoverable under Rule 16(a)(1)(E)(i), and the government is obliged to comply. The prosecution is required to produce all EPA documents responsive to the Defendants' request, including documents reflecting EPA's characterization of particulates from the de-

struction of the World Trade Center, the toxicological effect of the particulates, the potential exposures to airborne and settled particulates, statements about air quality, air monitoring results and medical monitoring results.[19], [20]

## 9. General Exculpatory Material

The Defendants have asked the government to produce statements allegedly made by Libby residents and reported by the prosecution to the defense that Defendant Wolter is a "stand-up guy" and a "straight shooter." In response, the government has referred the Defendants to the Report of Interview of Gaylon "Lum" Owens. In light of this response, there is no basis for an order compelling production of responsive documents.

### III. Order

Based on the foregoing, Grace's Motion to Compel (dkt # 177) is GRANTED in part and DENIED in part as set forth above, and the individual Defendants' Motion for Production of Brady Materials (dkt # 176) is GRANTED in part and DENIED in part as set forth above.

---

[19]. This material must be produced no later than January 13, 2006.

[20]. The Defendants also note the statement by John Melone, then the director of the National Priority Chemicals Division in EPA's Office of Pollution, Prevention and Toxic Substances, that "to characterize this vermiculite material as dangerous was contrary to science." The Defendants request any EPA documents supporting or agreeing with the statement, which is not a direct quote and was apparently made during a teleconference with EPA's on-site coordinator in Libby. *See* Schneider and McCumber, *An Air That Kills*, 197. This request is highly speculative and does not warrant the issuance of an order compelling production of responsive documents. This finding does nothing, however, to diminish the prosecution's obligation under *Brady* to disclose any EPA documents showing that the agency or one of its employees ever took the position attributed to Melone in *An Air That Kills*.