**UNITED STATES of America,**
**Plaintiff,**

v.

**W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.**

**No. CR 05–07–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

April 25, 2006.

Angelo J. Calfo, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, Missoula, MT, for Defendant Alan R. Stringer.

David S. Krakoff, Gary A. Winters, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Helena, MT, for Defendant Henry A. Eschenbach.

Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, William A. Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, for Defendant Jack W. Wolter.

Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, Palmer A. Hoovestal, Hoovestal Kakuk & Fanning, Helena, MT, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, for Defendant William J. McCaig.

David E. Roth, Stephen R. Spivack, Bradley Arant Rose & White LLP, Stephen A. Klein, Spriggs & Hollingsworth, Washington, DC, Aimee M. Grmoljez, Catherine A. Laughner, Browning Kaleczyc Berry & Hoven, Helena, MT, for Defendant Robert C. Walsh.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

Before the Court is a motion by Defendant Stringer on behalf of all Defendants for an order compelling the government to produce all of its agents' rough notes compiled during interviews with all government witnesses. The motion follows the Order dated November 23, 2005 (*United States v. Grace, et al.*, 401 F.Supp.2d 1087 (D.Mont.2005)), in which the government was compelled to produce rough interview notes for all past and present Grace employees falling within the purview of Rule

16(a)(1)(c), Fed.R.Crim.P.[1] Now the Defendants argue that the government has failed to comply with this Court's Order, and that the government has not disclosed *Brady*[2] material contained in the rough interview notes of other witnesses. The Defendants ask that the Court order production of all rough interview notes in the government's possession; production of notes for witnesses for whom the government has not prepared memoranda of interview; and identification of all notes of interviews that have been destroyed. The Defendants also want an evidentiary hearing to determine whether the government should be subject to further sanctions for failure to comply with the Court's orders. The government opposes the motion. There is no need for a hearing. I am not persuaded by the Defendants' position nor their argument. For the reasons set forth below, the motion is denied.

## II. Factual Background

On November 23, 2005 the government was ordered to produce rough interview notes for past and present Grace employees if the government intends to argue at trial that Grace is bound by the statements or conduct of the employee. The United States then produced 25 sets of agent notes from interviews with current and former Grace employees. Of those, the Defendants have identified three witnesses[3] for whom the memoranda of interview, or Investigative Activity Reports

("IARs") prepared by interviewing agents contain much more detail than the rough interview notes upon which the IARs are ostensibly based. From this discrepancy the Defendants speculated that the government did not to provide all rough interview notes, and sent a letter February 21, 2006 asking the government to confirm that it had provided all rough interview notes for qualifying past and present Grace employees. On February 28, 2006, the government conceded by letter that it had located "a set of rough interview notes not previously disclosed." The newly discovered set of rough interview notes was produced. The United States now again states that it has produced all available rough interviews notes in accordance with the Court's November 23, 2005 Order. The government gives no explanation for the delay in locating or producing the recently provided rough notes.[4]

The Defendants have also identified a number of instances in which they contend the rough interview notes for a witness contain exculpatory material that was not included in the formal IAR that was prepared based on the rough notes. This prompted a tactical move by the Defendants to request in their February 21, 2006 letter that the government produce rough interview notes for all witnesses, so the Defendants could satisfy themselves that no *Brady* material is contained in the

---

1. By the same Order, the Court denied Grace's motion for an order requiring the government to inspect all rough interview notes for *Brady* material, holding that *Brady* imposed a self-executing obligation that need not be confirmed by an order of the Court. *See Grace,* 401 F.Supp.2d at 1092.

2. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

3. The witnesses are Steve Venuti, Rayetta Morrison and Kendra Lind.

4. One possible explanation is the manner in which Montana's U.S. Attorney has allocated resources for the preparation and trial of a case such as this. It appears that just one Montana AUSA is assigned to the task of moving this case in accordance with the schedules and orders of the Court. The number of lawyers for the defense exceeds 20. Mr. Mercer resides in Washington, D.C. and apparently concerns himself with policy and congressional hearings, while his constitutional job in Montana is on autopilot. *See* § 501 USA Patriot Act (2006).

rough interview notes. The government refused the request.

## III. Analysis

### A. The Defendants' request for discovery sanctions under Rule 16(d)(2)(D)

#### 1. The obligation to disclose rough interview notes pursuant to Rule 16(a)(1)(B)(ii)[5]

Rule 16(a)(1)(B) provides in relevant part: .

> Upon a defendant's written request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

> .   .   .   .   .

> (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent.[6]

This Court has previously determined that the government's disclosure obligation under Rule 16(a)(1)(B)(ii) extends to rough interview notes of interviews with the Defendants, "including qualifying agents of Defendant Grace under Rule 16(a)(1)(c)." *Grace*, 401 F.Supp.2d at 1091. A witness is an agent of Defendant Grace for purposes of this case if the government claims that the witness' position within the company was such that W.R. Grace is bound by the witness' statements or conduct. *Id.* at 1092.

The Defendants' current request for all rough interview notes in the government's possession goes well beyond the scope of the government's obligation as defined in the November 23, 2005 Order. Consequently, the justification for the motion must lie somewhere other than Rule 16(a)(1)(B)(ii). The Defendants make a stretch to rely upon Rule 16(d)(2)(D), which states, "If a party fails to comply with this rule, the court may ... enter any other order that is just under the circumstances." Citing the government's concession that it did not fully disclose all discoverable rough interview notes by the deadline established by the Court, the Defendants argue that justice now requires that all rough interview notes for all witnesses be produced.[7]

#### 2. Discussion

Before considering sanctions, it is necessary to examine the nature and extent of the government's failure to produce all rough interview notes. The Defendants' suggestion in their February 21, 2006 letter that the government had not provided all rough notes was based on the interview materials of three witnesses: Steve Venuti, Rayetta Morrison and Kendra Lind. In each case, the Defendants observe that the interviewing agents produced detailed IARs despite sparse rough interview notes. In Lind's case, the IAR is one and a third single-spaced pages, while the rough interview notes do not fill a full page. Although much of the information in the Lind IAR can be traced to the

---

**5.** The government's obligation under Rule 16(a)(1)(B)(ii) is discussed in greater detail in the Court' November 23, 2005 Order. *See Grace*, 401 F.Supp.2d at 1089–1092.

**6.** Prior to the 2002 amendments to the Federal Rules of Criminal Procedure, the disclosure obligation of Rule 16(a)(1)(B)(ii) was set forth in Rule 16(a)(1)(A).

**7.** The Defendants also speculate that the government has destroyed or otherwise failed to preserve rough interview notes, stating that they have "no confidence" in the government's written representation that it has preserved all rough interview notes. Def.'s Br. at 10. There being no basis in the record for this allegation, it does not serve as a justification in whole or in part for the imposition of sanctions under Rule 16(d)(2)(D).

rough notes, other portions of the IAR contain information that is not written in the notes. The IAR was signed in March of 2005, six and nine months, respectively, after the interviews of Lind took place. Morrison's IAR consists of one page of single-spaced information, most of which is not written in the rough notes of her interview. The rough notes partially fill nine lines of notebook paper. The IAR was prepared two weeks after Morrison's interview. The IAR for Venuti's interview is five full single-spaced pages in length. The rough notes of the Venuti interview initially provided by the government consist of 39 words. The Venuti IAR was generated seven weeks after the interview.

After the Defendants pointed out the contrast in detail between the rough notes and the IARs described above, the government "rechecked its files" and found undisclosed rough notes of interviews for Venuti and six other former Grace employees.[8] Those rough notes have now been disclosed. The government makes no attempt to explain its failure to locate and disclose these rough notes earlier.

■ The question here is whether the government's failure to timely disclose all rough interview notes warrant sanctions under Rule 16(d)(2)(D), and if so, whether the sanctions come in the form of an order requiring disclosure of rough interview notes for all government witnesses.

The government's failure and non-disclosure merits no sanctions. This dispute is just one more in a series of conflicts which demonstrates that the parties have approached discovery with a complete disregard for the goal of a timely trial. Each time the government fails to fully comply with its discovery obligations or is dilatory in disclosing all discoverable materials, the Defendants overstate the significance of the missing information and insinuate that the government is intentionally engaging in gamesmanship or other improper behavior. The Defendants cast the government's missteps as part of a series of transgressions, designed to deprive them of a fair trial, that when taken as a whole amount to a deprivation of required discovery so severe as to prevent the Defendants from conducting any meaningful trial preparation. The reality is that the Defendants have received a huge amount of discovery, and in some instances more than they are entitled to under the Federal Rules of Criminal procedure.[9] The ongoing squabbles about the completeness of the government's disclosures occur on the margins, implicating a small fraction of the materials already disclosed, and do not at this point jeopardize in any way the Defendants' ability to prepare for trial.

The government, for its part, continues to fall short of its discovery obligations despite repeated assurances to the Court that it understands those obligations and its indignant responses when the Defendants suggest that the government's production does not measure up. The government made no effort to explain the nondisclosure of rough interview notes, which suggests that the government continues to take a nonchalant approach both to its obligations and its failures to comply with

8. The witnesses are Tom Hamilton, Jerry Berke, Leroy Thom, Robert Beagle, Ron Bonanto, and Paul Connor.

9. The Defendants, having previously argued that the material they sought in their discovery motions was necessary to present an adequate defense, and having received the discovery pursuant to this Court's orders, now complain that they cannot review the materials and prepare for trial simultaneously, and therefore have requested a continuance of the trial currently set for September 11, 2006, still more than four months away. *See* Defendants' joint motion for a continuance (Doc. No. 334).

those obligations. The government states in its brief,

> This Court has never held that the government has failed to comply with its discovery orders. The government complied with this Court's initial discovery order by disclosing on May 4, 2005, an enormous amount of materials. At that time the government had good faith bases for delineating the scope of discovery as it did.

Govt.'s Resp. Br. at 8. The government's boast ignores the Order dated December 5, 2005, in which this Court wrote,

> The Scheduling Order set a deadline of April 29, 2005 for fulfillment of the government's discovery obligations under Rule 16, Fed.R.Crim.P. As discussed in the Court's orders dated November 23, 2005, *the government failed to fully comply with that deadline,* resulting in a delay of several months in the completion of discovery. It is my impression that the delay is due largely to *the government's practice of adopting aggressive legal positions in defense of nondisclosure* and waiting for an order of this Court to sort out the dispute.

*United States v. Grace, et al.,* 402 F.Supp.2d 1178, 1181 (D.Mont.2005) (emphasis added).

Nonetheless, the government's failure to disclose a portion of the discoverable rough interview notes does not warrant the sanctions sought by the Defendants. Although it is troubling that the government is unable or unwilling to explain its error, there is no indication that bad faith motivated the non-disclosure, and the government quickly cured the problem upon learning that a discrepancy existed.[10] To the extent that the untimely disclosure visits any harm upon the Defendants, that injury is mitigated by the fact that trial is

still more than four months away. One more incident like this and I will order counsel to verify every pleading and each production under penalty of perjury or false statement. Anything more, however, would be excessive and not "just under the circumstances" as set forth in Rule 16(d)(2)(D).

## B. The Defendants' request for disclosure of exculpatory material contained in undisclosed rough interview notes

The Defendants have previously asked for an order requiring the government to review all rough interview notes in its possession for information that is exculpatory or otherwise favorable to the accused under *Brady.* When that motion was denied, it was noted that the Brady obligation is self-executing. The government represented that it would review the rough interview notes for *Brady* material. The Defendants now allege that the government has failed to disclose exculpatory material contained in the rough notes, and ask that the Court require production of all rough notes as a sanction. Again, an over-reach.

The Defendants' claim is based on an inference from the Defendants' review of the notes provided for Grace employees. In several instances, Defendants contend, the rough interview notes of past and present Grace employees contain *Brady* material not included in the IARs for those employees. The Defendants therefore assume that the IARs for non-employee witnesses similarly fail to include all information favorable to the them in the rough notes of those employees. The strength of this speculative inference depends in part on the extent to which the instances cited

---

**10.** In this regard, it should be noted that the apparent disconnect between the rough notes and the IARs for witnesses Lind and Morrison is not evidence of non-compliance by the government with discovery rules.

by the Defendants demonstrate the government's failure to translate all favorable material from rough notes to IARs.

For example, the rough notes of interview for Randy Geiger, a former environmental engineer at the Libby mine, contain statements that "we probably overstepped what Al Stringer knew about asbestos" in the context of the Screening Plant clean-up, and that Stringer had "no education, no background for doing it." The Defendants contend that those statements do not appear in the IAR, although this cannot be verified because only two pages of the seven-page IAR were submitted to the Court by the Defendants. The Defendants characterize the statements as "potentially exculpatory," but the government correctly notes that the statements do not suggest that Defendant Stringer knew nothing about asbestos or that he was unaware of the dangers posed by asbestos. An objective reading of the statements allows one to infer no more than that Grace's engineers knew more about asbestos than its managers. The statements don't implicate *Brady*.

The rough interview notes for former Grace plant engineer Mike Ray reflect Ray's statement that he "is certain [he] said something to the Parkers about tremolite but cannot recall what."[11] The statement is not included in the Ray IAR. The Defendants say the statement is "directly exculpatory and critically important to the defense in light of the government's allegations that the defendants did not make disclosures to the Parkers about tremolite on the property." Def.'s Br. at 8. Contrary to the Defendants' characterization, the statement is not directly exculpatory. Count III alleges that the Defendants knowingly placed another person in danger through the release of asbestos into the air; non-disclosure is not an element of that offense. The "OVERT ACTS" section of Count I contains an allegation that Defendants Grace and Bettacchi "failed to disclose the health hazard associated with" the property, Indictment, ¶ 165, but Ray's statement that he said "something" to the Parkers about tremolite is not exculpatory with respect to that allegation. While the Defendants assume that Ray's statement to the Parkers was a warning about tremolite, it could just as likely have been a reassurance that tremolite was not dangerous, or that it was not present on the property. Ray's inability to recall anything of the substance of his statement to the Parkers deprives the statement of any exculpatory value. The government's failure to include Ray's statement in his IAR is not evidence of a propensity by the government to omit exculpatory material from IARs.

The Defendants also cite the interviews of former Grace employees Ron Halverson and Francis "Don" Landis. The rough notes for Halverson, a former employee at the Libby mine, contain a statement by Halverson that "[t]he mill would try to keep the levels of [air pollution] below the [government] levels." The statement does not appear in Halverson's IAR, although there is extensive discussion in the IAR of other safety precautions taken at the Libby mine. The rough notes for Francis reflect his statement that "as a truck driver [he] had an air conditioned and pressurized cab to keep contaminants out." The statement does not appear in Francis' IAR, although that IAR, like Halverson's, contains a discussion of safety precautions in effect at the Grace plant during Landis' tenure.

---

11. Mel and Lerah Parker purchased the former site of Grace's Screening Plant in 1993. Indictment, ¶ 29. The Screening Plant trans-

action forms the basis of Count III of the Indictment.

The omitted information in the Halverson and Landis rough notes is favorable to the accused in that it shows that the managers of the Grace mine had some regard for worker safety. The statements probably should have been transferred from the rough notes to the IARS, but in both instances the majority of the witness' exculpatory statements about safety practices made it into the final product.

The Defendants consider the omissions described above as "compelling evidence" that the rough notes of interview for non-Grace employees contain material favorable to the accused that has not been disclosed pursuant to *Brady*. They move for an order requiring disclosure of the information on the theory that the omitted statements are material to the defense and therefore must be disclosed pursuant to Rule 16(a)(1)(E)(I). The Defendants are correct to bring their request pursuant to Rule 16 rather than *Brady*,[12] but their motion nonetheless fails for two reasons. First, Rule 16(a)(2) exempts from disclosure all internal documents generated by agents (including rough interview notes) unless another provision of the rule provides to the contrary. While Rule 16(a)(1)(B)(ii) requires production of rough interview notes for the Defendants and

any qualifying Grace employees, it does not require the production of rough notes for non-Grace employees. *See Grace,* 401 F.Supp.2d at 1091.

■ This means that if the Defendants are entitled to the rough notes of non-Grace employees, it must be because the notes are "material to the defense" under Rule 16(a)(1)(E)(I). But the Defendants cannot demonstrate materiality because they cannot show that the information they seek even exists. To show materiality a defendant must present "facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990). Here, all the Defendants have shown is two instances in which a small amount of information favorable to the accused was not translated from rough notes to the final IAR.[13] That is not evidence of undisclosed exculpatory material in the rough notes held not subject to disclosure, particularly in light of the government's representation that it has inspected those rough notes for *Brady* material and found none. The Court has previously refused to "impose an additional burden [on the government] by compelling production of documents that may or may

12. *See United States v. Grace, et al.,* 401 F.Supp.2d 1069, 1076–1077 (D.Mont.2005) (explaining that *Brady* is not normally the basis for pretrial motions because where a defendant is seeking exculpatory information of which he is generally aware such information is "material to the defense" and should be sought pursuant to Rule 16).

13. In their reply brief, the Defendants cite the rough notes of interview for former Grace employee Leroy Thom, which were included in the government's late disclosure in response to the Defendants' February 21, 2006 letter. The notes reflect Thom's statement that it "was not company policy to allow [the] public to have [vermiculite] ore. [A member of the public] needed to know someone in order to get the stuff." The Defendants argue

that this statement is exculpatory with respect to Count VIII, which Defendants characterize as charging Stringer and Grace with "falsely asserting ... that the general public in Libby did not have access to vermiculite ore." In fact, Count VIII charges that Stringer and Grace "provided the following false and misleading information: that defendant W.R. Grace did not provide vermiculite contaminated with tremolite asbestos to the general public in Libby." The exculpatory value of Thom's statement is questionable because Thom stated that members of the public were provided ore by Defendant Grace if they knew someone in the company. Thus, Thom's statement does not tend to contradict the Indictment's allegation that the statement by Stringer and Grace was false.

not exist based on the speculative inferences of the defense." *Grace*, 401 F.Supp.2d at 1083. It so too here. The Defendants' motion should be denied.

### V. Conclusion

Based on the foregoing, Defendant Grace's motion to compel further production of rough interview notes (Doc. No. 326) is DENIED. The government's failure to provide all rough interview notes of qualifying Grace employees does not warrant sanctions of the nature contemplated by the Defendants, and the Defendants have failed to demonstrate any factual basis for their speculation that the government is withholding *Brady* material contained in the rough notes held not subject to disclosure.