**UNITED STATES of America, Plaintiff,**

v.

**Dan ANDERSON (01), Ronald Keel (02), Robert C. LaHue (03), Ronald H. LaHue (04), Ruth Lehr (05), Dennis McClatchey (06), Mark Thompson (07), Defendants.**

Nos. 98–20030–01–JWL through 98–20030–07–JWL.

United States District Court, D. Kansas.

Dec. 15, 1998.

Russell S. Jones, Jr., Thomas G. Kokoruda, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for Gina Kaiser.

Keith E. Drill, Ronald D. Lee, Jacqueline A.Cook, James R. Wyrsch, David A. Kelly, Wyrsch Hobbs Mirakian & Lee, Kansas City, MO, for Dan Anderson.

Robert J. Campbell, James E. Kelley, Jr., Lewis, Rice & Fingersh, L.C., Kansas City, MO, for Ronald Keel.

Bruce C. Houdek, Kansas City, MO, for Robert C. LaHue.

Robert C. LaHue, Stillwell, KS, pro se.

Anne M. Brafford, Bryan Cave LLP, Kansas City, MO, James L. Eisenbrandt, Jeffrey D. Morris, Bryan Cave LLP, Overland Park, for Ronald H. LaHue.

Ronald H. LaHue, Leawood, KS, pro se.

Thomas E. Carew, Morrison & Hecker L.L.P., Kansas City, MO, Gerald A. Feffer, Williams & Connolly, Washington, DC, for Ruth Lehr.

Charles W. German, Scott M. Brinkman, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Dennis McClatchey.

Micheal D. Strohbehn, Walters, Bender & Strohbehn, Kansas City, MO, R. Stan Mortenson, Barry J. Pollack, Jody M. Kris, Miller, Cassidy, Larroca & Lewis, Washington, DC, for Mark Thompson.

Tanya J. Treadway, Office of the U.S. Atty., Kansas City, MO, William Bowne, U.S. Dept. of Justice, Fraud Section, Washington, DC, for U.S.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

On November 25, 1998, the court entered an order requiring the government to produce certain discovery pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in this complex prosecution arising out of an alleged Medicare fraud scheme. The government has moved the court for reconsideration. For the reasons set forth below the government's motion is granted in part and denied in part.

 Because there is no provision for a motion to reconsider in the Federal Rules of Criminal Procedure, federal courts recognize motions to reconsider pursuant to the common law doctrine recognized in *United States v. Healy,* 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). *See also United States v. Corey,* 999 F.2d 493, 495 (10th Cir.1993). Where such motions seek the court's reconsideration of dispositive rulings, they are essentially treated the same as motions to alter or amend judgment in the civil context under Fed.R.Civ.P. 59(e). *United States v. Schweibinz,* No. 93–40001–06–SAC, 1994 WL 129998, at *1 n. 1 (D.Kan. March 15, 1994). Where, as here, such motions seek the court's reconsideration of nondispositive rulings, it is more appropriate to apply the same standard as for motions to reconsider pursuant to D. Kan. R. 7.3 ("A motion to reconsider shall be based on (1) an intervening change in controlling law, (2) availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice."). The opportunity to present a motion to reconsider should not be viewed as a second opportunity "for the losing party to make its strongest case or to dress up arguments that previously failed." *Schweibinz,* 1994 WL 129998, at *1 n. 1. Whether to grant or deny a motion to reconsider is committed to the district court's sound discretion. *Phelps v. Hamilton,* 122 F.3d 1309, 1324 (10th Cir.1997).

The government first asks the court to reconsider its order requiring the government to disclose incentive payments made to prosecutors or FBI agents in this case or the case against Baptist and any commendations or financial remunerations received by FBI agents as a result of the indictment in this

case, the Baptist case, the settlement by Bethany Hospital, or the criminal case against Tom Eckard. The government advances three arguments in favor of reconsideration. First, the government complains that the court has not required the defendants to show the requested information even exists. Second, the government complains that the information ordered to be disclosed is not material because the credibility of government agents will not be a material issue in this case. Finally, the government complains that the court's order is too broad in that it orders disclosure of incentives to prosecutors and other non-witnesses.

The court disagrees with the government's first and second arguments. The government is correct that the court has not required the defendants to show that the sought-after information actually exists; however, this is of no moment. The court's order focuses on "(1) whether the court's current view of the evidence leads it to believe there is a reasonable probability the information will affect the outcome, and (2) whether the defense request is sufficiently specific." *United States v. Anderson,* Nos. 98–20030–01/–07–JWL, slip op. at 8 (D.Kan. Nov. 25, 1998) ("November 25 Order"). Here, the court's current view of the evidence is that some or all of the defendants will vigorously contend that the government's allegations in this case are vastly overreaching. Moreover, it would be hard to imagine a defense request along these lines that is more specific. In the court's view, any evidence that testifying government agents are receiving or have received commendations or incentive payments as described in the court's November 25 order would have a reasonable probability to affect the outcome because it would be proper impeachment evidence of bias, tending to show that the agent's testimony is colored by personal financial or professional advancement considerations and is not worthy of belief. *Cf. Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (sovereignty's "interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

On the other hand, the court narrows its ruling, despite the government's failure to argue the specifics of the defendants' request in its original papers, because its original scope goes beyond what would appear to the court to be admissible evidence at trial. To qualify for disclosure under *Brady,* evidence must be admissible or must lead to admissible evidence. *See* November 25 Order, at 7–8 n. 1. The defendants have not shown how incentives might be admissible at trial other than as impeachment evidence tending to show bias of government agent witnesses. *See United States v. Abel,* 469 U.S. 45, 51, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Accordingly, the court alters its November 25 Order and requires the government to disclose [1] (1) any incentive payments, commendations, or financial remunerations paid or offered to government agents who will testify at trial; and (2) any incentive payments, commendations, or financial remunerations paid or offered to non-testifying government agents (including prosecutors) or to other non-witnesses at the direction or approval of government agents who will testify at trial.

The government next asks the court to reconsider or clarify its order concerning inconsistent or contradictory oral or written statements made by prospective government witnesses. The court ordered the government to produce "any contradictions or inconsistent statements made by a government witness about that witness' testimony [and] any direct contradictions made by a government witness about another government witness' testimony." November 25 Order, at 16. The government complains that the November 25 Order does not appear to be limited to material contradictions and inconsistencies. *See United States v. Uphoff,* 907 F.Supp. 1475, 1479 (D.Kan.1995). The government also complains that the order requires the government to anticipate all of its witness' trial testimony.

The court clarifies its order as follows: the court's order should be read to require the production of only material contradictions and inconsistencies concerning only actual

---

1. The government's disclosure obligation includes only incentive payments, commendations, or financial remunerations in connection with this case, the case against Baptist, the settlement by Bethany Hospital, or the criminal case against Tom Eckard.

testimony at the grand jury and expected testimony at trial.[2] On the specificity/probability of affecting the outcome scale, the defense request spoke only in broad generalities. Moreover, there is no reason to believe minor inconsistencies [3] will have a probability to affect the outcome at trial.

▇ The government next asks the court to reconsider and limit its order requiring the government to disclose "any pending suit or claims against government witnesses by the federal government." November 25 Order, at 17. The government contends the court's order is too broad and that it should not be required to seek out information across the vast bureaucracy.

Although the court notes the government did not argue this point in connection with the original motion, the court agrees with the government and grants the government's motion for reconsideration because to do otherwise would be to allow a "manifest error of law." *See Phelps*, 122 F.3d at 1324. As Judge Crow explained,

> *Brady* requires the government to disclose only the material exculpatory evidence that is in its possession. "Possession" for *Brady* purposes is determined by several governing principles. "It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'" ... At the same time, what the government possesses is not determined only from what the prosecution has in its file. "[A] prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." ... "If a federal prosecutor has knowledge of and access to exculpatory information as defined in *Brady* ..., then the prosecutor must disclose it to the defense." ... A duty to search files maintained by government agencies closely aligned with the prosecution may

be triggered when there is some reasonable prospect or notice of finding exculpatory evidence. Mere possibilities or utter speculation will not give rise to this duty to search.... "As the burden of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort." ...

*United States v. Jackson*, 850 F.Supp. 1481, 1502 (D.Kan.1994) (citations omitted). At the same time,

> the agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute. The government cannot with its right hand say it has nothing while its left hand holds what is of value.... The government in the form of the prosecutor cannot tell the court that there is nothing more to disclose while the agency interested in the prosecution holds in its files information favorable to the defendant.

*United States v. Wood*, 57 F.3d 733, 737 (9th Cir.1995) (citations omitted). Accordingly, the court modifies its November 25 Order to require the government to disclose any pending suit or claims against government witnesses by the federal government that is known to any person involved in the investigation or prosecution of this action, the action against Baptist Medical Center, the settlement by Bethany Hospital, or the criminal case against Tom Eckard, no matter what agency actually employs the involved person. In this way, the government can avoid the burden of having to "search files," based on mere the mere possibility that something fruitful will turn up, *see Jackson*, 850 F.Supp. at 1502, but can at the same time avoid saying it has nothing in its right hand "while

---

**2.** This duty shall be ongoing and should the government first determine that evidence covered hereby is available at the time or after a witness testifies at trial, the government will immediately notify the court and opposing counsel.

**3.** The government posits the hypothetical situation where one of its witnesses testified at the grand jury that she worked at Baptist Medical

Center between February, 1987 and March, 1993, but the witness's resume indicates she worked at Baptist between January 1987 and April 1993. Although such evidence is marginally exculpatory because it would tend to impeach the government witness, it simply is not material and need not be produced in the absence of a further showing by the defense why such information would be material.

its left hand holds what is of value." *Wood,* 57 F.3d at 737.

 Finally, the government asks the court to reconsider its order requiring the government to produce "rough notes of witness interviews conducted by government agents which are exculpatory to these defendants." November 25 Order, at 17; *see also United States v. Pelullo,* 105 F.3d 117, 123 (3d Cir.1997) (conviction reversed on collateral attack because material exculpatory information appearing in FBI agent's rough notes but not in FBI 302 report was not disclosed). The court made this order because it held that the government had made no showing that the defendants' request for the rough notes should be denied. The government contends that the court's ruling was incorrect because it did argue that the defendants' request should be denied. Moreover, the government contends that it already has sufficiently responded to the defendant's request for this information in the form of redacted FBI 302s, and that any further information would be duplicative. The government claims that the production would be burdensome and time-consuming because it would require "rereviewing hundreds of interview reports and their corresponding rough notes, and then producing redacted rough notes."

Although the court disapproves of the government's practice of making broad, general arguments and expecting the court to indulge the government by searching for ways to apply the arguments in order to deny the defense's itemized requests, the court agrees that the government's response to the original discovery motion could be construed to argue that the defendants had not made the requisite showing that exculpatory information exists and is being withheld. *See* Government's Consolidated Response Brief, Doc. 173, at 166 (citing *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ("In the typical case where a defendant makes only a general request for exculpatory material under *Brady,* ... it is the [government] that decides which information must be disclosed.")). Here, however, the government's general arguments are insufficient because the defendants' broad request for exculpatory rough notes was coupled with the contention that witnesses have explained how FBI agents interviewing them refused to write when the witnesses provided "favorable information." Moreover, the defendants' response to the pending motion indicates that "a number of witnesses have indicated that [favorable] information was discussed in the interviews but for some reason does not appear in the [FBI 302s]."

Accordingly, the court generally denies the government's motion on this point, but limits the government's disclosure requirement to (1) material and exculpatory information from rough notes taken by FBI agents who will testify at trial and (2) previously undisclosed material and exculpatory information from rough notes taken by FBI agents who will not testify at trial. Of course, the government must disclose material and exculpatory information appearing in all FBI rough interview notes to the extent the information does not appear in the FBI 302 reports already disclosed. This disclosure requirement clearly falls within the *Brady* mandate. The government must also disclose, however, the specific material and exculpatory information appearing in rough notes taken by any FBI agent who will testify at trial, even if that information duplicates information already provided in FBI 302 reports. On these facts, evidence of material and exculpatory information appearing in a testifying FBI agent's rough notes (as distinct from his or her 302 reports) falls within the *Brady* mandate because it is exculpatory in ways different from the information provided in the 302 reports. The 302 reports provide information that is exculpatory because the information tends to lend credence to the defendants' version of events. Duplicative information found in a testifying FBI agent's rough notes, however, is exculpatory because it will, according to the defendants, lead to admissible impeachment evidence against the testifying agent. That is, the information will lead to evidence that the testifying FBI agent conducted a biased investigation by ignoring exculpatory evidence or by altering the import of it in the process of converting from rough notes to 302s. Moreover, the very process the FBI uses, spurning recording devices and relying on agent note taking, tends to lend credence to the defendants' argument that exculpatory witness comments

were ignored. Variance between rough notes and 302s, even as to material which is duplicative, is proper grist for impeachment for bias. Evidence along the lines which defendants seek here would have a reasonable probability to affect the outcome of the case and would be highly material.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's motion for reconsideration (Doc. 209) is granted in part and denied in part.

**IT IS SO ORDERED.**