UNITED STATES of America

v.

David B. CHALMERS, Jr., Oscar S. Wyatt, Jr., Tongsung Park, John Irving, Ludmil Dionissiev, Catalina del Socorro Miguel Fuentes, a/k/a "Cathy Miguel," Mohammed Saidji, Bayoil (USA), Inc., Bayoil Supply & Trading Limited, Nafta Petroleum Company Limited, Mednafta Trading Company Limited, and Sarenco, S.A., Defendants.

No. S3 05 CR.59(DC).

United States District Court,
S.D. New York.

Jan. 25, 2006.

Michael J. Garcia, United States Attorney for the Southern District of New York, by Edward O'Callaghan, Stephen Miller, Michael Farbiarz, Assistant United States Attorneys, New York, NY, for the United States.

Stillman & Friedman, P.C., by Paul Schectman, Glen Kopp, New York, NY, for Defendant David B. Chalmers, Jr.

Welsh & Recker, P.C., by Catherine M. Recker, Philadelphia, PA, for Defendants Bayoil Companies.

Dechert LLP, by David M. Howard, Philadelphia, PA, for Defendant Ludmil Dionissiev.

The Parker Law Firm, by Carl A. Parker, Port Arthur, TX, Miller & Chevalier Chartered, By Richard A. Hibey, Washington, D.C., for Defendant Oscar S. Wyatt, Jr.

## OPINION

CHIN, District Judge.

In this case, the defendants are alleged to have engaged in a scheme to defraud the United Nations Oil–for–Food Program and the people of Iraq. The Superseding Indictment alleges that certain defendants, in concert with others, paid secret and illegal surcharges to the Government of Iraq for the right to participate in the Oil–for–Food Program, thereby obtaining the ability to purchase oil from Iraq when they otherwise would have been prohibited by law from doing so.

Before the Court are three motions by the defendants to compel discovery. First, David B. Chalmers, Jr., Ludmil Dionissiev, Bayoil (USA), Inc., and Bayoil Supply & Trading Limited (together, the "Bayoil Defendants") seek an order compelling the Government[1] to provide a bill of particulars. Second, the Bayoil Defendants and defendant Oscar S. Wyatt, Jr., seek an order compelling the Government to provide discovery of all materials within the custody and control of all agencies of the United States that have investigated the Oil–for–Food Program. Third, the defendants Bayoil (USA), Inc., and Bayoil Supply & Trading Limited (together, the "Bayoil Companies") seek an order com-

pelling the Court to order the Government to produce all statements of all alleged corporate agents discoverable under Rule 16(a)(1)(C). For the reasons set forth below, the motions are granted in part and denied in part.

## STATEMENT OF THE CASE

### A. The Facts

As alleged in the Superseding Indictment, S3 05 Cr. 59(DC), the facts are as follows:

In August 1990, less than a week after the Iraqi army invaded Kuwait, the United States and the United Nations (the "U.N.") imposed economic sanctions on the Government of Iraq. These sanctions prohibited the United States and all members of the United Nations from trading in any Iraqi commodities or products, including Iraqi oil. (Indictment ¶ 1; see also Bayoil Br. at 2).

In April 1995, convinced of the need for a "temporary measure to provide for the humanitarian aid of the Iraqi people," the Security Council of the U.N. authorized the Government of Iraq to sell oil under certain limited conditions. (Bayoil Br. at 2; see Indictment ¶ 2). Principally, the conditions required that the proceeds of all sales of Iraqi oil were to be deposited into an escrow bank account monitored by the U.N. and used to purchase humanitarian goods for the benefit of the Iraqi people. In May 1996, the Iraqi government agreed to the terms set out by the Security Council and the United Nations Office of Iraq Programme, also known as the Oil–for–Food Program, was established. (Indictment ¶¶ 2, 3).

During the operation of the Oil–for–Food Program, federal law prohibited

[1]. References to the "Government" are to the United States Attorney's Office for Southern District of New York.

United States companies and individuals from doing business with the Government of Iraq unless they received a license from the Department of Treasury. (Indictment ¶ 4). Under the Program, the Iraqi government had total control over the selection of the companies and individuals who were to receive the right to purchase Iraqi oil. Sometime in 2000, officials of the Iraqi government allegedly began conditioning the distribution of allocations of oil on the recipient's willingness to pay a secret surcharge to the Government of Iraq. Under this surcharge scheme, several hundred million dollars (or more) were allegedly paid to the Iraqi government through front companies and/or bank accounts controlled by the Iraqi government. (Indictment ¶¶ 6, 7).

The Bayoil Defendants, Wyatt, and others allegedly participated in the surcharge scheme, paying millions of dollars to the Government of Iraq outside of the Oil–for–Food Program. By participating in the surcharge scheme, defendants allegedly "caused funds to be diverted from the Oil–for–Food Bank Account that otherwise would have been available to purchase humanitarian goods under the Oil–for–Food Program." (Indictment ¶¶ 22, 23).

**B.** *The Superseding Indictment*

The Bayoil Defendants were charged in a four-count Indictment unsealed on April 14, 2005. On October 21, 2005, a Superseding Indictment, S2 05 Cr. 59(DC), was unsealed containing the same four counts as the Indictment but adding additional defendants, including Wyatt. Following oral arguments on these motions, a third Indictment was filed containing a fifth count against an additional defendant, Tongsun Park. S3 05 Cr. 59(DC). The instant motions were filed and argued based on the October 21, 2005, indictment, but the first through fourth counts are the same in both indictments. Accordingly, the Court treats the instant motions as

being directed at the current indictment, S3 05 Cr. 59(DC) (the "Superseding Indictment").

The Superseding Indictment charges Wyatt, the Bayoil Defendants, and others with: one count of conspiracy to commit wire fraud and to engage in prohibited financial transactions with Iraq in violation of 18 U.S.C. §§ 371 & 1349; one count of wire fraud in violation of 18 U.S.C. §§ 1343, 1349 & 2; one count of engaging in prohibited financial transactions with Iraq in violation of 18 U.S.C. §§ 2332d & 2; and one count of violation of the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* Count Five of the Superseding Indictment charges Park with conspiracy to act as an unregistered agent of a foreign government, to violate the Foreign Agents Registration Act, and to launder money.

These motions followed.

### DISCUSSION

I discuss each motion in turn.

**1.** *Defendants' Request for a Bill of Particulars*

The Bayoil Defendants move for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. Specifically, they seek specification of the wire transmissions, financial transactions, instances of alleged travel "to and from Iraq," and false and fraudulent representations or material omissions alleged to be illegal in Counts One and Two, as well as identification of alleged co-conspirators and the victims of the alleged fraud. The Government opposes the motion, arguing that the Superseding Indictment and discovery provide sufficient information to enable defendants to effectively defend the charges against them.

#### a. *Applicable Law*

█ "The function of a bill of particulars is to provide [a] defendant with information about the details of the charge against him ... and to avoid prejudicial surprise at ... trial." 1 Charles Alan Wright, *Federal Practice and Procedure: Criminal* 3d § 129, at 650 (1999) ("Wright"); *see United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990). A bill of particulars may serve the additional purpose of enabling a defendant to plead double jeopardy should he be prosecuted a second time for the same offense. *See United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987).

█ A defendant is not entitled to a bill of particulars as a matter of right. *See United States v. Bin Laden,* 92 F.Supp.2d 225, 233 (S.D.N.Y.2000) (quoting Wright, 1 *Federal Practice and Procedure* § 129, at 648). Rather, a bill of particulars is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *Torres,* 901 F.2d at 234 (quoting *United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987)).

█ The decision whether to grant a bill of particulars rests within the district court's discretion. *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984); *see also* Fed.R.Crim.P. 7(f) ("The court may direct the government to file a bill of particulars."). To determine if a bill of particulars is necessary for the adequate preparation of a defense, the court may consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise available to the defen-

dants." *United States v. Shoher,* 555 F.Supp. 346, 349 (S.D.N.Y.1983). The court must also determine whether the information sought has been provided elsewhere, such as through discovery, prior proceedings, or the indictment itself, which may obviate the need for a bill of particulars. *United States v. Strawberry,* 892 F.Supp. 519, 526 (S.D.N.Y.1995).[2]

#### b. *Application*

The Bayoil Defendants seek particulars in three categories: (i) specific transactions, transmissions, and false representations or omissions; (ii) the identity of other co-conspirators; and (iii) the identity of alleged victims.

##### (i) *Transactions, Transmissions, and Misrepresentations or Omissions*

█ The Bayoil Defendants argue that "the Superseding Indictment provides [them] with little more than the obvious fact that they have been indicted for unlawful conduct (wire transmissions, financial transactions and travel) related to the Oil–for–Food Program." (Bayoil Br. at 13). The Government responds that the Superseding Indictment is sufficiently detailed. The Government further argues that it has provided the defendants with a significant amount of discovery and identified for the defendants the relevance of certain documents and audio recordings that have been produced. Accordingly, the Government maintains that the defendants have sufficient information regarding the requested information to allow them to adequately defend against the

---

**2.** Though the law governing Rule 7(f) motions is clear, when applying these principles to a particular case, "it becomes apparent that the foregoing, oft-repeated generalities provide little guidance" to the district court. *Bin Laden,* 92 F.Supp.2d at 234. Indeed, given the fact-sensitive inquiry and the wide discretion allowed to judges determining these mo-

tions, "the precedents furnish little help in disposing of requests for bills of particulars." *United States v. Metro. Leather & Findings Ass'n,* 82 F.Supp. 449, 454 (S.D.N.Y.1949); *Shoher,* 555 F.Supp. at 349 (commenting on "the limited utility of case precedent and the relative lack of concrete standards in this area").

charges. For the reasons set forth below, I agree with the Government.

The Bayoil Defendants' initial memorandum in support of their motion for a bill of particulars overlooks the fact that the detailed allegations laid out in Count One of the Superseding Indictment are incorporated by reference in the remaining counts. In Count One, the Government provides an overview of the alleged fraudulent scheme, setting forth forty-one overt acts, several of which provide specific examples of alleged wire transmissions and transfers of funds, including dates and times.[3]

In their reply memorandum, defendants apparently recognize the specificity the Government has provided in Count One, as defendants acknowledge that their motion for specification as to the wire transmissions and financial transactions will be "largely moot" if the wire transmissions and financial transactions identified in Count One are the only ones the Government will ask the jury to consider at trial. (Bayoil Reply at 6). Thus, with respect to the request for specific transactions or transmissions, defendants seek assurance from the Government that these are the only transactions or transmissions it will seek to prove at trial.

Defendants' request rests on the duplicitous nature of the counts in the Indictment. Though defendants concede that the Second Circuit permits duplicitous counts,[4] citing *United States v. Margiotta* and *United States v. Upton* they argue that the Government must particularize the transactions and transmissions it will use at trial because each alleged act is technically a separate crime. (Tr. 4).[5] *See Margiotta*, 646 F.2d 729 (2d Cir.1981); *Upton*, 856 F.Supp. 727 (E.D.N.Y.1994). Neither of these cases clarifies, however, whether the Government is required to inform the defendants of all the wire transmissions it will seek to prove at trial. Instead, in both *Margiotta* and *Upton* the

---

**3.** *See, e.g.*, Indictment ¶ 27(g) ("In or about December 2000, DAVID B. CHALMERS, JR., on behalf of the BAYOIL COMPANIES, sent a letter via facsimile to officials of the Government of Iraq in which CHALMERS proposed a pricing mechanism that could be used to seek a lower [Official Selling Price ('O.S.P.')] for Iraqi oil."); Indictment ¶ 27(h) ("On or about December 14, 2000, OSCAR S. WYATT, JR., sent messages via electronic mail and facsimile to officials of the Government of Iraq in which WYATT proposed a pricing mechanism that could be used to seek a lower O.S.P. for Iraq oil."); Indictment ¶ 27(j) ("In or about April 2001, DAVID B. CHALMERS, JR., asked OSCAR S. WYATT, JR., to hand-deliver a letter from CHALMERS to an official of the Government of Iraq in which CHALMERS sought favorable consideration from the Iraqis on future shipments of Iraqi oil based on his and the BAYOIL COMPANIES' long history of cooperation with the Government of Iraq."); Indictment ¶ 27(k) ("From on or about May 7, 2001, up to and including on or about May 13, 2001, OSCAR S. WYATT, JR., CATALINA del SOCORRO MIGUEL FUENTES, a/k/a 'Cathy Miguel,'

and MOHAMMED SAIDJI caused approximately $590,000 in cash to be deposited in a bank account controlled by the Government of Iraq at the Jordan National Bank in Amman."); Indictment ¶ 27(w) ("On or about October 4, 2001, pursuant to [a previously described contract entered into between Dionissiev, Chalmers, and an unnamed co-conspirator ('CC-1')], representatives of the BAYOIL COMPANIES paid CC-1 a commission of approximately $839,368.40 via wire transfer, and CC-1 thereafter conveyed approximately $629,526.30 of this commission to representatives of the Government of Iraq.").

**4.** In *United States v. Margiotta*, the Second Circuit held that a single count of an indictment may contain several allegations that could be stated as separate offenses. 646 F.2d 729, 733 (2d Cir.1981) ("We do not agree that whatever acts the Constitution permits to be punished separately are required to be stated in separate counts.").

**5.** References to "Tr." are to the transcript of the January 13, 2006, oral argument.

Government had already specified an upper limit on the evidence it would introduce at trial. *Margiotta*, 646 F.2d at 732; *Upton*, 856 F.Supp. at 753.

■ Though the courts apparently approved the Government's approach in *Margiotta* and *Upton*, neither case held that the Government *must* inform a defendant of all transmissions it will use to prove a defendant's guilt at trial in a bill of particulars and I decline to so hold. Bills of particulars are not intended to serve as a general discovery device or a means to allow defendants to preview the Government's case. *United States v. Gibson*, 175 F.Supp.2d 532, 537 (S.D.N.Y.2001). Moreover, given the volume of documents in this case, it would be premature to require the Government to limit itself now to the specified acts of the Superseding Indictment or any additional acts it might be able to specify in a bill of particulars.

■ Defendants argue that they need the requested information to determine whether the Superseding Indictment is impermissibly duplicitous. In *Margiotta*, the Second Circuit outlined the policy concerns that might lead a court to find an indictment impermissibly duplicitous. 646 F.2d at 732–33. Such concerns "include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." *Id.* (citing *United States v. Murray*, 618 F.2d 892, 897 (2d Cir.1980)).

A bill of particulars is not necessary to protect the defendants from an impermissibly duplicitous count. Rather, these policy concerns can be adequately addressed at trial through the presentation of proof and/or perhaps through a special verdict form. Of course, the jury will be instructed that, to find the defendants guilty, it must be unanimous as to any transactions or transmissions it finds were proven.

The Government's approach to its discovery obligations further reduces the need for a bill of particulars. The Government has already provided extensive discovery in this case. Of course, "sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F.Supp.2d 225, 234 (S.D.N.Y.2000) (citing *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir.1987)). In this case, however, the Government has attempted to distill the "mountain" of potential evidence for the defendants, providing them with "roadmaps" explaining which documents support each overt act alleged in the Superseding Indictment. (Gov't Br. Ex. A; Tr. 36–37). Moreover, at oral argument, the Government stated that it planned to provide the defendants with a subset of documents, culled out from the voluminous records, that it believes support the charges and may be used in its case-in-chief. (Tr. 37). Accordingly, defendants have or will have sufficient information to defend against these charges.

Defendants argue that they need the requested information to determine whether they should file any pre-trial motions, including any challenges to venue or based on multiplicity. Defendants can bring whatever motions the evidence they currently have supports, without prejudice to making further requests for relief should any additional evidence or information warrant. Alternatively, defendants can challenge venue or otherwise seek relief at trial.

Accordingly, this prong of defendants' request for a bill of particulars is hereby denied, except to the limited extent that

the Government is ordered to identify, thirty days before the start of trial, any instances of alleged travel to and from Iraq and any allegedly unlawful transmissions and transactions, not already identified in the Superseding Indictment, that it will seek to prove at trial. The Court will not require the Government to make these decisions now. At trial, the Court will be sensitive to the reasonableness of the number of additional transactions alleged by the Government, taking into account whether defendants have had an adequate opportunity to prepare their defense and the length of trial.

### (ii) *Co–Conspirators*

The Bayoil Defendants seek the identity of unindicted co-conspirators, known and unknown. The Government opposes, arguing that courts in this district have "routinely denied" defendants' Rule 7(f) requests for the identity of unindicted co-conspirators. (Gov't Br. at 38 (citing *United States v. Torres*, 901 F.2d 205, 234–35 (2d Cir.1990) (holding denial was not abuse of discretion); *United States v. Trippe*, 171 F.Supp.2d 230, 240 (S.D.N.Y.2001); *United States v. Mitlof*, 165 F.Supp.2d 558, 569 (S.D.N.Y.2001) (denying request); *United States v. Reinhold*, 994 F.Supp. 194, 200–01 (S.D.N.Y.1998) (denying request); *United States v. Gonzalez*, No. 04 Cr. 078(DAB), 2004 WL 2297341, at *1 (S.D.N.Y. Oct. 24, 2004) (denying request))). Though the Government is correct that courts frequently deny such requests, courts in this district regularly grant them, as well. *See United States v. Falkowitz*, 214 F.Supp.2d 365, 390–92 (S.D.N.Y.2002) (unspecified number of co-conspirators involved in wide-ranging conspiracy lasting four years with significant pre-trial discovery); *United States v. Bin Laden*, 92 F.Supp.2d 225, 241–42 (S.D.N.Y. 2000) (granting request in case involving at least twenty co-conspirators in conspiracy lasting at least ten years); *United States v. Nachamie*, 91 F.Supp.2d 565, 572–73 (S.D.N.Y.2000) (granting defendants' request in case involving conspiracy lasting three years, with eight defendants, unknown number of unindicted defendants, and voluminous discovery); *United States v. Strawberry*, 892 F.Supp. 519, 527 (S.D.N.Y.1995); *United States v. Taylor*, 707 F.Supp. 696, 700 (S.D.N.Y.1989) (granting similar request in case involving two defendants charged with narcotics conspiracy); *United States v. Feola*, 651 F.Supp. 1068, 1131–34 (S.D.N.Y.1987) (granting in case involving nineteen co-conspirators in conspiracy lasting under a year); *United States v. Chovanec*, 467 F.Supp. 41, 46 (S.D.N.Y.1979). The Second Circuit has upheld decisions granting and denying requests for the identity of co-conspirators. *Compare United States v. Torres*, 901 F.2d 205, 233–34 (2d Cir. 1990) (affirming denial) *with Feola*, 651 F.Supp. at 1131–34 (granting demand), *aff'd without op.*, 875 F.2d 857 (2d Cir. 1989).

■ Here, the defendants' request for the identities of co-conspirators is denied. As discussed above, the Government has provided extensive discovery, minimizing the need for a bill of particulars identifying the unindicted co-conspirators in this case. Further, whether the unindicted co-conspirators might be in danger should their identities be revealed, it is clear that the "potential harm to the Government's investigation" that might be caused by specification of unindicted co-conspirators is significant in this case. *See Bin Laden*, 92 F.Supp.2d at 241–42. In determining whether to grant a bill of particulars, the question is not whether the information would be useful to the defense, but rather whether it is necessary. *United States v. Henry*, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994). Here, because the requested infor-

mation is not necessary for the preparation of the defense, this request is denied.

### (iii) *Identity of Victims of Fraud*

 The Bayoil Defendants also requested specification of the identity of the victim or victims of the alleged fraud. At oral argument, the Government identified the victims of the fraud as the United Nations Oil–for–Food Program and the Iraqi people. (Tr. 13). Accordingly, defendants' request for specification of the victims is denied as moot.

### 2. *Rule 16 and Brady*

Defendants seek discovery pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E) and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, the Bayoil Defendants seek an order "compelling the prosecution to provide discovery as to materials within the custody and control of all government agencies that have investigated the United Nations Oil–for–Food Program or that oversaw the Program." (Bayoil Br. at 1). These agencies include "the Department of State and its constituent agency the United States Mission to the United Nations; the Department of Treasury; and the Iraq Survey Group, which includes participants from the Department of Defense and the Central Intelligence Agency." (*Id.*). Wyatt also seeks documents from these agencies and, in addition, from the National Security Agency and the United States Congress, including from various congressional subcommittees related to national security, international relations, and energy.[6] (Wyatt Br. at 1–2). The Government opposes the motions principally on the grounds that Rule 16 and *Brady* only require production of documents within the possession, custody, or control of the pros-

ecution, not the entirety of the Executive and Legislative Branches.

 Rule 16(a)(1)(E) provides that, [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

Fed.R.Crim.P. 16(a)(1)(E). *Brady* requires the Government to disclose "evidence favorable to the accused when such evidence is material to guilt or punishment." *United States v. Gil*, 297 F.3d 93, 101 (2d Cir.2002) (citing *Brady*, 373 U.S. at 87, 83 S.Ct. 1194). The issue, for purposes of this motion, is whether documents in the possession, custody, or control of other federal agencies—i.e., one of the Federal Entities—should be considered to be in the possession, custody, or control of the prosecutors in the case.

In a line of cases addressing the prosecutor's *Brady* obligations, the Second Circuit has explained that "[t]he *Brady* obligation extends only to material evidence ... that is known to the prosecutor. An individual prosecutor is presumed, however, to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" *United States v. Avellino*, 136

---

**6.** The various government agencies will be referred to herein as the "Federal Entities."

F.3d 249, 255 (2d Cir.1998) (quoting *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); citing *United States v. Payne,* 63 F.3d 1200, 1208 (2d Cir.1995)). Nonetheless,

> "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a 'monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.' "

*Id.* (quoting *United States v. Gambino,* 835 F.Supp. 74, 95 (E.D.N.Y.1993), *aff'd,* 59 F.3d 353 (2d Cir.1995)). Thus, the Second Circuit has espoused the view that *Brady* materials need not be disclosed if the "prosecution team in the instant case" is unaware of the materials. *United States v. Locascio,* 6 F.3d 924, 949 (2d Cir.1993) (refusing to impute to prosecutors knowledge of reports prepared by FBI agents who were "uninvolved in the investigation or trial"); *see also United States v. Quinn,* 445 F.2d 940, 944 (2d Cir.1971) (rejecting as "completely untenable" the position that "knowledge of any part of the government is equivalent to knowledge on the part of this prosecutor"). Citing these cases, the Government urges the Court to adopt the view that the prosecutor's "duty to learn extends only to members of the prosecution team who can be said to serve as an arm of the prosecution." (Gov't Br. at 8). According to the prosecution, it is under no obligation to search the files of the Federal Entities because no one from any of the Federal Entities substantially participated in this prosecution or investigation. (*Id.* at 10–11).

Defendants argue that these cases do not control the prosecution's Rule 16 obligations because they were all decided in the context of alleged *Brady* violations after the defendants in the respective cases had been convicted. The prosecution concedes that the Second Circuit has not defined "the government" for Rule 16 purposes. *See United States v. Volpe,* 42 F.Supp.2d 204, 221 (E.D.N.Y.1999) (noting that Second Circuit has not yet addressed this issue); *United States v. Holihan,* 236 F.Supp.2d 255, 260 (W.D.N.Y.2002) ("[T]he Second Circuit has not analyzed the phrase 'in possession, custody, or control of the government' in connection with [Rule 16]."). Thus, citing *United States v. Giffen,* 379 F.Supp.2d 337, 342 (S.D.N.Y. 2004), Wyatt argues that the prosecution's Rule 16 obligation is not limited to documents within its direct control and actual possession, and instead extends to "all documents material to the preparation of the defense that it has knowledge of and access to." (Wyatt Reply Br. at 4 (quoting *Giffen,* 379 F.Supp.2d at 342–43); *see also* Bayoil Reply Br. at 2–3). Likewise, the Bayoil defendants, citing out-of-circuit authorities, argue that the "government" should be considered both the prosecutor and any investigating or enforcement agencies that are closely connected to the prosecution. (Bayoil Br. at 8–9 (citing *Smith v. Sec'y of N.M. Dep't of Corr.,* 50 F.3d 801, 825 n. 6 (10th Cir.1995); *United States v. Jordan,* 316 F.3d 1215, 1249 (11th Cir.2003); *United States v. Thornton,* 1 F.3d 149, 158 (3d Cir.1993); *United States v. Wood,* 57 F.3d 733, 737 (9th Cir.1995))).

In *Giffen,* the defense sought production of documents from the Central Intelligence Agency and National Security Council that the prosecution had reviewed in the course of its investigation. 379 F.Supp.2d at 341. The court explained that a prosecutor "is not 'allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial.' " *Id.* at 342–

43 (quoting *United States v. Trevino,* 556 F.2d 1265, 1272 (5th Cir.1977)). It therefore held that "[d]ocuments that the Government has reviewed or has access to must be provided to aid a defendant in preparing his defense." *Id.* (citing *United States v. Santiago,* 46 F.3d 885, 894 (9th Cir.1995); *United States v. Zuno–Arce,* 44 F.3d 1420, 1427 (9th Cir.1995)).

In *Wood,* the defendant was charged with unlawfully dispensing drugs, and the Ninth Circuit held that a *Brady* violation occurred when the prosecution failed to turn over certain reports of the Food and Drug Administration ("FDA") that bore on the safety of the drug. 57 F.3d at 735. The Ninth Circuit wrote that

> [f]or *Brady* purposes, the FDA and the prosecutor were one. We need not decide now how far the unity of the government extends under the *Brady* rule. We hold only that under *Brady* the agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute. The government cannot with its right hand say it has nothing while its left hand holds what is of value. The government in the form of the prosecutor cannot tell the court that there is nothing more to disclose while the agency interested in the prosecution holds in its files information favorable to the defendant.

*Id.* at 737 (citations omitted). Relying on these cases, defendants urge the Court to impose on the prosecution "a limited duty to search the files of specific agencies for specific categories of documents." (Bayoil Reply Br. at 4).

 The defense argument has some force, but ultimately there is nothing in *Giffen, Wood,* or anything else that has been brought to the Court's attention to support the imposition of such a duty on the prosecution. First, although the "material to the defense" category is arguably a broader scope of documents than exculpatory materials required by *Brady,* the Court is not persuaded that the "government" for purposes of Rule 16 should be any broader than the "prosecution team" standard that has been adopted in the *Brady* line of cases. The concern of the Second Circuit in *Avellino* that a "monolithic view" of government would "condemn the prosecution of criminal cases to a state of paralysis" applies with equal force in the Rule 16 context. 136 F.3d at 255. Second, the holdings of *Giffen* and *Wood* are not at odds with this principle. Although in *Giffen* the Court arguably espoused a broad view of "access" to documents, the Court ultimately held only that the prosecution was required to disclose CIA and Department of State documents that it had actually reviewed. 379 F.Supp.2d at 343 ("The Government acknowledges that it reviewed documents relating to Giffen … at the CIA and Department of State during the course of its investigation. Giffen is entitled to review those classified documents to assess the viability of a public authority defense."). In *Wood,* the Ninth Circuit specifically declined to decide "how far the unity of the government extends," and held that an agency "charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution," should be considered "one" with the prosecution. 57 F.3d at 737. This limiting language, though arguably broader than the Second Circuit's "prosecution team" approach, hardly supports the imposition of a duty to search the files of the various Federal Entities at issue here.

The import of these cases, then, is that the prosecution must disclose documents material to the defense (1) that it has actually reviewed, or (2) that are in the

possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the "prosecution team." As to the first category, the defense concedes that these documents have already been disclosed, or accepts the representation that they soon will be. As to the second, defendants allege only that various of the Federal Entities either conducted their own investigations or made documents available to the prosecution (which have already been turned over, or will be). This is insufficient to establish that each of the Federal Entities was a part of the "prosecution team." *See United States v. Volpe,* 42 F.Supp.2d 204, 221 (E.D.N.Y.1999) (construing "government" narrowly and refusing under Rule 16 to require the prosecution to turn over material in possession of different prosecution team within same U.S. Attorney's office); *United States v. Upton,* 856 F.Supp. 727, 750 (E.D.N.Y.1994) (refusing to order prosecution to disclose documents in possession of other agencies because no "joint investigation" existed). Accordingly, defendants' request for an order compelling the prosecution to search additional files of the Federal Entities is denied.

### 3. *Rule 16(a)(1)(C): Statements by Corporate Employees and Agents*

Pursuant to Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure, the Bayoil Companies move for disclosure of all statements made by persons the Government alleges bind the Bayoil Companies. (Bayoil Br. at 18).

Upon a corporate defendant's request, Rule 16(a)(1)(C) requires that:

[T]he government must disclose to the defendant any statement ... if the government contends that the person making the statement:
(i) was legally able to bind the defendant *regarding the subject of the statement* because of that person's position

as the defendant's director, officer, employee, or agent; *or*
(ii) *was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant regarding that conduct* because of that person's position as the defendant's director, officer, employee, or agent.

Fed.R.Crim.P. 16(a)(1)(C) (emphasis added).

The Bayoil Companies claim that Rule 16(a)(1)(C) requires that the Government disclose all statements made by individuals alleged to bind the corporation whether or not the statements were made in a representative capacity. For example, the Bayoil Companies argue that they are entitled to disclosure of statements made to law enforcement officers and grand jury minutes of employees or agents alleged to have bound the corporation through their actions. The Government opposes the motion, arguing that Rule 16(a)(1)(C) only requires the disclosure of those *statements* that the Government alleges bind the corporate defendant. In other words, the Government argues that defendants are only entitled to contemporaneous statements of these employees or agents, and not to statements made in subsequent interviews with law enforcement or grand jury testimony. (Tr. 20–21; Gov't Br. at 41–43). The Government claims that the statements requested by the Bayoil Companies fall within Jencks Act materials and, accordingly, the request for their disclosure is premature. (*Id.* at 21–22).

To the extent that they request all statements made by individuals alleged to have bound the corporate defendants through their personal involvement in the offense, the Bayoil Companies' motion is granted. To the extent that they are seeking statements made by agents or employees who are not alleged to have bound the corporate defendants by their statements or conduct, the motion is denied.

First, a plain reading of the rule supports the defendants' claim that the Government must disclose all statements made by persons whose actions it alleges bind the Bayoil Companies. Subpart i of Rule 16(a)(1)(C) requires the disclosure of *statements* the Government alleges bind the corporate defendant. If the Court accepted the Government's interpretation of Rule 16(a)(1)(C), subpart (ii) would add nothing to the rule. Further, unlike subpart i, Rule 16(a)(1)(C)(ii) does not limit the Government's discovery obligation only to "binding" statements. Rather, it provides that, upon the corporate defendant's request, the Government must disclose "*any statement*" of persons alleged by the Government to have been "*personally involved in the alleged conduct constituting the offense and ... legally able to bind the defendant regarding that conduct.*" Fed. R.Crim.P. 16(a)(1)(C)(ii); *compare* Rule 16(a)(1)(C)(i) (government must disclose statements of employees or agents it alleges could bind corporate defendant "regarding the subject matter of that statement"). Thus, subpart ii ties the Government's discovery obligation to the *conduct of the agent/employee* making the statement rather than the *subject matter of the statement.* Accordingly, a plain reading of the subpart ii indicates that the Government must disclose *all* statements of any agent or employee who it alleges was (1) personally involved in the conduct at issue and (2) capable of binding the defendant with that conduct.

Second, the Government's position is inconsistent with the purpose of the 1994 amendment to Rule 16. Rule 16 was amended in 1994 "to clarify that the discovery and disclosure requirements of the rule apply equally to individual and organizational defendants." Fed.R.Crim.P. 16(a)(1)(C) advisory committee's note to 1994 Amendments (citing *In re United States*, 918 F.2d 138 (11th Cir.1990)). Moreover, the amendment recognized that a corporate defendant can "be vicariously liable for an agent's actions." *Id.*

When the Government seeks to hold a corporate entity criminally responsible based on the acts of the corporation's agents or employees, it does so on a theory that the person's actions are in essence actions of the corporate defendant. The Government cannot then argue that the statements by these involved employees or agents are not statements of the corporate defendant. Such a conclusion is inconsistent with the 1994 amendment's intent. To place a corporate defendant in the same position as an individual defendant, "it should be entitled to the statement of anyone for whose acts it may be criminally responsible." *United States v. Bhutani*, No. 93 Cr. 585, 1995 WL 632069, *4 (N.D.Ill. Sept.1, 1995).

Third, in the few cases addressing the scope of the amended rule, the Government's position that only binding contemporaneous statements must be disclosed has been rejected. Instead, courts have held that the government must disclose "the statements of all persons whose statements *or conduct* it seeks to use" to hold the corporate defendant criminally responsible. *United States v. Lin Lyn Trading, Ltd.*, 911 F.Supp. 494, 497 (D.Utah 1996) (emphasis added); *see also Bhutani*, 1995 WL 632069, *3 (holding that "the rule applies to statements of employees or other persons for whose acts the corporation may be criminally responsible").

The Government argues that *United States v. Dessange* supports its claim that it need not produce these statements until shortly before trial. 99 Cr. 1182(DLC), 2000 WL 257155 (S.D.N.Y. March 7, 2000). *Dessange* is distinguishable. As in this case, the corporate defendant moved for disclosure of statements made by corporate employees during interviews with gov-

ernment agents. The Government opposed, arguing that these statements did not bind the corporation. In *Dessange*, however, the Government did not seek to hold the corporation liable for any of the employees' actions.[7]

The Government suggests that the Bayoil Companies' interpretation of Rule 16 is in conflict with the Jencks Act. (Gov't Br. at 41–42). Rule 16 does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Rule 16(a)(2). The Jencks Act, however, explicitly excepts statements made by the defendant. 18 U.S.C. § 3500(a) ("no statement . . . made by a . . . prospective Government witness (other than the defendant) shall be the subject of . . . discovery"). As discussed above, when the Government seeks to hold a corporate defendant criminally responsible for the conduct of its agent or employee, statements made by that individual are essentially statements of the defendant, thus bringing them within the Jencks exception.

Of course, Rule 16(a)(1)(C)(ii) is not without limits. The Government need not produce non-binding statements of employees or agents not alleged to have been personally involved in the acts underlying the charged offenses or who were not able to bind the corporate defendants through those acts. Rather, the Government must disclose: (1) under Rule 16(a)(1)(C)(i), statements by agents or employees that the Government alleges bind the corporate defendant; and (2) under Rule 16(a)(1)(C)(ii), statements (both contemporaneous and post-conduct) made by individuals who it claims: (a) were personally involved in the alleged conduct and (b) whose conduct was legally able to bind the defendant.

## CONCLUSION

For the reasons set forth above, defendants' motion for a bill of particulars is denied, except to the limited extent set forth above; defendants' request pursuant to Rule 16(a)(1)(E) for an order compelling the prosecution to search additional files of an order compelling the prosecution to search additional files of the Federal Entities is denied; and defendants' motion pursuant to Rule 16(a)(1)(C) is granted to the extent that the Government must disclose, in addition to statements of agents or employees that purportedly bound the corporate defendants, statements of corporate agents or employees who it alleges were personally involved in the alleged conduct underlying the charges and bound the corporate defendants through those acts.

SO ORDERED.

---

7. In its brief, the Government cites *United States v. Reddy*, 190 F.Supp.2d 558, 573 (S.D.N.Y.2002) and *United States v. Wei*, 862 F.Supp. 1129, 1135 (S.D.N.Y.1994). (Gov't Br. at 42). In neither of these cases, however, did the government allege that conduct by the parties making the requested statements bound the defendants. *Reddy*, 190 F.Supp.2d at 573; *Wei*, 862 F.Supp. at 1135.